[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 30, 2010
JOHN LEY
CLERK

_____

No. 09-15089

_____

D. C. Docket No. 08-14225-CV-FJL

PRINCETON HOMES, INC.,
a Florida corporation,

Plaintiff-Appellant-
Counter Defendant,

versus

JOSEPH A. VIRONE,
MARY ANN VIRONE,
as Husband and Wife,

Defendants-Appellees
Counter Claimants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 30, 2010)

Before BLACK, WILSON and COX, Circuit Judges.

WILSON, Circuit Judge:

Princeton Homes, Inc. ("Princeton"), the seller of a pre-construction town home at the Townhomes at St. Andrews Park Phase I, a community in Port St. Lucie, Florida, appeals the district court's grant of summary judgment to Joseph A. Virone and Mary Ann Virone (the "Virones"), the buyers who permanently reside in New Jersey. The district court granted the Virones' motions for summary judgment substantially for the reason that the Virones did not receive a disclosure summary, which they were entitled to receive pursuant to Florida Statute § 720.401, or a printed property report pursuant to the Interstate Land Sales Full Disclosure Act ("ILSFDA"), 15 U.S.C. § 1701 *et seq*. The district court ordered the cancellation of the purchase agreement with Princeton, the return of the Virones' $50,000.00 deposit, and attorneys' fees and costs. We affirm.

## I. BACKGROUND

On January 23, 2006, Princeton and the Virones executed a purchase agreement obligating Princeton to sell and build a town home in St. Andrews Park. As prospective parcel owners in a community subject to a homeowners' association membership requirement, the Virones were entitled to receive a "disclosure summary" before executing the contract of sale pursuant to Florida Statute § 720.401(1)(a), in a form that is substantially similar to the one provided in the statute as follows:

2

# DISCLOSURE SUMMARY
## FOR
## (NAME OF COMMUNITY)

1.  AS A PURCHASER OF PROPERTY IN THIS COMMUNITY, YOU WILL BE OBLIGATED TO BE A MEMBER OF A HOMEOWNERS' ASSOCIATION.

2.  THERE HAVE BEEN OR WILL BE RECORDED RESTRICTIVE COVENANTS GOVERNING THE USE AND OCCUPANCY OF PROPERTIES IN THIS COMMUNITY.

3.  YOU WILL BE OBLIGATED TO PAY ASSESSMENTS TO THE ASSOCIATION.  ASSESSMENTS MAY BE SUBJECT TO PERIODIC CHANGE.  IF APPLICABLE, THE CURRENT AMOUNT IS $___ PER ___.  YOU WILL ALSO BE OBLIGATED TO PAY ANY SPECIAL ASSESSMENTS IMPOSED BY THE ASSOCIATION.  SUCH SPECIAL ASSESSMENTS MAY BE SUBJECT TO CHANGE.  IF APPLICABLE, THE CURRENT AMOUNT IS $___ PER ___.

4.  YOU MAY BE OBLIGATED TO PAY SPECIAL ASSESSMENTS TO THE RESPECTIVE MUNICIPALITY, COUNTY, OR SPECIAL DISTRICT.  ALL ASSESSMENTS ARE SUBJECT TO PERIODIC CHANGE.

5.  YOUR FAILURE TO PAY SPECIAL ASSESSMENTS OR ASSESSMENTS LEVIED BY A MANDATORY HOMEOWNERS' ASSOCIATION COULD RESULT IN A LIEN ON YOUR PROPERTY.

6.  THERE MAY BE AN OBLIGATION TO PAY RENT OR LAND USE FEES FOR RECREATIONAL OR OTHER COMMONLY USED FACILITIES AS AN OBLIGATION OF MEMBERSHIP IN THE HOMEOWNERS' ASSOCIATION.  IF APPLICABLE, THE CURRENT AMOUNT IS $___ PER ___.

7.  THE DEVELOPER MAY HAVE THE RIGHT TO AMEND THE RESTRICTIVE COVENANTS WITHOUT THE APPROVAL OF THE ASSOCIATION MEMBERSHIP OR THE APPROVAL OF THE PARCEL OWNERS.

8.  THE STATEMENTS CONTAINED IN THIS DISCLOSURE FORM ARE ONLY SUMMARY IN NATURE, AND, AS A

PROSPECTIVE PURCHASER, YOU SHOULD REFER TO THE COVENANTS AND THE ASSOCIATION GOVERNING DOCUMENTS BEFORE PURCHASING PROPERTY.

9. THESE DOCUMENTS ARE EITHER MATTERS OF PUBLIC RECORD AND CAN BE OBTAINED FROM THE RECORD OFFICE IN THE COUNTY WHERE THE PROPERTY IS LOCATED, OR ARE NOT RECORDED AND CAN BE OBTAINED FROM THE DEVELOPER.

DATE:                                    PURCHASER:
                                          PURCHASER:

Fla. Stat. § 720.401(1)(a). The Virones never received a disclosure summary. On January 30, 2008, more than two years after signing the purchase agreement, but before closing, the Virones gave Princeton written notice of their intention to void the purchase agreement pursuant to Florida Statute § 720.401(1)(c), which permits a buyer to void the contract of sale if a disclosure summary is not provided prior to closing. On May 12, 2008, the Virones sent a letter to Princeton declaring their election to revoke the purchase agreement due to Princeton's failure to provide the Virones a printed property report pursuant to the ILSFDA. Princeton failed to acknowledge both letters, and never cancelled or revoked the purchase agreement. Princeton and the Virones never closed on the town home.

On May 19, 2008, Princeton filed a complaint in Florida state court seeking specific performance for the Virones' failure to close on the town home and damages for breach of the purchase agreement. On June 23, 2008, the Virones

4

removed the case to the United States District Court for the Southern District of Florida, answered Princeton's complaint, and filed a counterclaim with four counts. The counts in the counterclaim were for: (I) Violation of the ILSFDA, (II) Violation of the Florida Deceptive and Unfair Trade Practices Act, (III) Cancellation pursuant to Florida Statute § 720.401, and (IV) Cancellation based on availability of financing. Only Counts I and III are pertinent to this appeal, as the remaining two counts became moot and are not argued on appeal.

On January 31, 2009, the Virones filed their first motion for summary judgment on Counts III and IV of their counterclaim, arguing, *inter alia*, that Princeton was the "developer" and "parcel owner" of the lot on which their town home was to be constructed, and therefore, Princeton was obligated to provide the Virones with a disclosure summary substantially similar to the one provided in Florida Statute § 720.401, but failed to do so. The district court granted the Virones' motion for summary judgment on Count III, finding that Princeton violated § 720.401, and rendered Count IV and Princeton's complaint moot. Thus, the Virones were permitted to void the purchase agreement and recover their deposit. The district court then ordered the parties to submit a stipulated motion as to the remaining issues. The district court granted the stipulated motion, leaving only Count I of the Virones' counterclaim on the violation of the ILSFDA at issue.

5

On April 27, 2009, the Virones filed their second motion for summary judgment on Count I of their counterclaim, arguing that Princeton violated the ILSFDA because it was not exempt from providing the Virones a property report or disclosing the right to a property report in the purchase agreement. On April 30, 2009, Princeton filed a motion for summary judgment on Count I of the Virones' counterclaim, arguing that it was exempt from the ILSFDA under 15 U.S.C. § 1702(a)(2) and (b)(2) because it obligated itself to build the town home within two years and because it did not sell more than twelve town homes in St. Andrews Park within one year from the date of the first sale. The district court granted the Virones' motion for summary judgment and denied Princeton's, finding that Princeton was not exempt from providing the Virones with a property report under the ILSFDA. Although the Virones sought rescission of the purchase agreement, the district court found that the two-year statute of limitations had run, and consequently, it awarded damages in the amount of the Virones' deposit.[1] The

---

[1] A purchaser may recover in law or in equity for a violation of 15 U.S.C. § 1703(a), and the court may order "damages, specific performance, or such other relief as the court deems fair, just and equitable." 15 U.S.C. § 1709(a). Although 15 U.S.C. § 1703(c) only permits the purchaser to revoke the contract "within two years from the date of signing such contract," 15 U.S.C. § 1711 specifically provides a three year statute of limitations to recover for violations of § 1703(a). Therefore, although the Virones could not revoke the purchase agreement pursuant to § 1703(c) because they filed their action more than two years after executing the purchase agreement, damages were recoverable for a violation of § 1703(a)(1) pursuant to § 1709(a) because they brought their ILSFDA action within three years of executing the purchase agreement.

district court directed the Virones to file a motion for final judgment, and the district court granted the motion, as well as attorneys' fees and costs. Princeton timely appealed.

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo* and apply the same legal standards that governed the district court's analysis. *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1194 (11th Cir. 2010) (citation omitted). Because the district court's finding that Princeton violated Florida Statute § 720.401 was based on statutory construction, we review the district court's determination *de novo*. *Tug Allie-B, Inc. v. United States*, 273 F.3d 936, 941 (11th Cir. 2001) (citation omitted). Because the district court's finding that Princeton was not exempt under the ILSFDA was based on its interpretation of the purchase agreement, we review its interpretation *de novo*. *See World Rentals & Sales, LLC v. Volvo Constr. Equip. Rents, Inc.*, 517 F.3d 1240, 1244 (11th Cir. 2008).

## III. DISCUSSION

### A. Violation of Florida Statute § 720.401

The parties do not dispute that St. Andrews Park is governed by St. Andrews Park Property Owners' Association, and that Florida Statute § 720.401 applies. Section 720.401(1)(a) requires that the "developer" or "parcel owner" provide the

buyer of a lot governed by a community association with a disclosure summary

identical to or substantially similar to the disclosure summary provided in the

statute. Further, if the buyer does not receive a disclosure summary before

executing the contract of sale,

> the purchaser may void the contract by delivering to the seller or the
> seller's agent or representative written notice canceling the contract
> within 3 days after receipt of the disclosure summary or prior to
> closing, whichever occurs first. This right may not be waived by the
> purchaser but terminates at closing.

Fla. Stat. § 720.401(1)(c). It is undisputed that the Virones were never presented a

disclosure summary by anyone, either before or after the purchase agreement was

executed.

In finding that Princeton violated § 720.401, the district court focused its

analysis principally on whether Princeton qualified as the "developer" or "parcel

owner," the entities identified by the statute that must provide the disclosures. The

district court conclusively found Princeton to be the "parcel owner" and stated that

Princeton's relationship to the development was sufficient to meet the definition of

"developer" under § 720.301(6). On appeal, Princeton argues that it is neither the

"developer" nor the "parcel owner" of the property at issue, but merely the

homebuilder. The Virones respond that Princeton was the "developer" or "parcel

owner," as determined by the district court. However, the Virones alternatively

8

argue, for the first time on appeal, that even if we find that Princeton does not meet these definitions, the Virones are still entitled to void the purchase agreement pursuant to § 720.401(1)(c).[2]  They argue that regardless of who was required to provide a disclosure summary, the Virones never received the disclosures, and at the heart of the statute is the importance that the buyers receive the disclosures from someone.  We agree with the Virones' alternative argument on appeal.

Section 720.401(1)(c) makes clear that a buyer may void the contract of sale against the seller, even though the seller may not always be the same entity as the "developer" or "parcel owner" required to provide the disclosure summary under §

---

[2] This theory was not presented to the district court in the Virones' motion for summary judgment.  It is well-settled that "appellate courts generally will not consider an issue or theory that was not raised in the district court." *FDIC v. Verex Assurance, Inc.*, 3 F.3d 391, 395 (11th Cir. 1993) (citation omitted).  However, this Court has identified five exceptions to that rule:

> First, an appellate court will consider an issue not raised in the district court if it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice.  Second, the rule may be relaxed where the appellant raises an objection to an order which he had no opportunity to raise at the district court level.  Third, the rule does not bar consideration by the appellate court in the first instance where the interest of substantial justice is at stake.  Fourth, a federal appellate court is justified in resolving an issue not passed on below . . . where the proper resolution is beyond any doubt.  Finally, it may be appropriate to consider an issue first raised on appeal if that issue presents significant questions of general impact or of great public concern.

*Dean Witter Reynolds, Inc. v. Fernandez*, 741 F.2d 355, 360–61 (11th Cir. 1984) (alteration in original) (internal citations and quotations omitted).  We find that the issue is a pure question of law, in which the proper resolution is beyond any doubt.  Thus, we choose to exercise our discretion to consider the Virones' theory on appeal.  *See United States v. S. Fabricating Co.*, 764 F.2d 780, 781 (11th Cir. 1985) (per curiam) ("The decision whether to consider" an argument raised for the first time on appeal "is left to the appellate court's discretion") (citation omitted)).

720.401(1)(a). The statute, read plainly as a whole, indicates that a buyer who does not receive the disclosures, regardless of who was required to provide them, is entitled to void the contract of sale by giving notice to the seller under § 720.401(1)(c). The Fourth District Court of Appeal of the State of Florida reached this conclusion, in a substantially similar scenario in *Princeton Homes, Inc. v. Morgan*, 4th DCA 2010, ___ So. 3d ___, (No. 4D09-958, June 9, 2010), which we find persuasive. *See Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285 (11th Cir. 2001) (In rendering a decision based on Florida substantive law, "[w]here the state's highest court has not spoken to an issue, a federal court must adhere to the decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise" (citation and quotation omitted)).

In *Morgan*, the buyer found herself in the same factual situation as the Virones and entered into a contract with Princeton to purchase a town home at St. Andrews Park. *Id.* at *1. The contract she executed was substantially similar in its terms, if not identical, to that executed by the Virones. *See id.* The buyer sued Princeton in Florida state court alleging that she did not receive the disclosure summary as required by Florida Statute § 720.401. *Id.* Like the Virones, the buyer sent Princeton written notice demanding a refund of her deposit and exercised her

10

right to void the contract of sale. *Id.* The trial court held that because the buyer never received a disclosure summary, and closing had not occurred, she had the right to void the contract under § 720.401(1)(c). *Id.* On appeal, the Florida court affirmed, stating that "[s]ection 720.401 could not be clearer in its explanation that if the disclosure summary is not provided to a prospective purchaser before the purchaser executes a contract for the sale of property, the purchaser may void the contract." *Id.* at *3 (citation omitted). The court relied on the statute's legislative purpose, which "is to ensure that prospective purchasers of properties in homeowners' associations will receive a disclosure summary." *Id.* More importantly, the court explained:

> In light of this statutory purpose, [it] need not decide whether the duty to provide the disclosure summary fell upon the title owner of the property at the time the contract was executed, or instead whether it fell upon Princeton Homes as the subsequent owner and prospective seller of the property under the contract. We conclude that regardless of which entity was required to present the disclosure summary, Morgan's right to void the contract arose because she did not receive the disclosure summary before executing the contract for sale or at any time thereafter.

*Id.* at *4 (footnote omitted).

We agree with the reasoning of the Fourth District Court of Appeal of Florida and believe that it is the correct interpretation of § 720.401. Even if Princeton is not the "developer" or "parcel owner" with no duty to provide a

11

disclosure summary, Princeton ran the risk that the Virones would exercise their right to void the purchase agreement by failing to ensure that the actual "developer" or "parcel owner," whoever they happened to be, timely provided a disclosure summary. Therefore, it is of no consequence whether Princeton was obligated to provide the Virones with a disclosure summary. The Virones properly exercised their right to void the contract of sale because they did not receive the required disclosures before closing.

Thus, we affirm on grounds other than those provided by the district court and need not decide whether Princeton should properly be labeled as the "developer" or "parcel owner" for purposes of § 720.401. *See Stegmaier v. Trammell*, 597 F.2d 1027, 1038 (5th Cir. 1979) (finding that "an appellate court must affirm the lower court's judgment if the result is correct even though it is based upon an improper ground" (citations omitted)).[3]

## B. Violation of the Interstate Land Sales Full Disclosure Act

The parties do not dispute that the ILSFDA applies to the sale of the town home, that the Virones never received a printed property report pursuant to 15 U.S.C. § 1703(a)(1)(B), and that the purchase agreement failed to disclose the

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Virones' right to revoke the purchase agreement based on the lack of a property report pursuant to 15 U.S.C. § 1703(c). When a property report has not been provided to the buyer before executing the contract of sale, "such contract or agreement may be revoked at the option of the purchaser or lessee within two years from the date of such signing, and such contract or agreement shall clearly provide this right." 15 U.S.C. § 1703(c).

The district court found that Princeton violated the ILSFDA because it did not provide a property report to the Virones before the purchase agreement was executed, and Princeton was not exempt from the ILSFDA pursuant to 15 U.S.C. § 1702. On appeal, Princeton argues that it did not give a property report to the Virones because it was exempt from the ILSFDA requirements, pursuant to § 1702(a)(2) and (b)(2).

### 1.    Exemption under 15 U.S.C. § 1702(a)(2)

Princeton argues that it was not required to provide the Virones with a property report because the purchase agreement and construction agreement obligated Princeton to complete construction of the town home within two years. A seller is exempt from providing a property report under the ILSFDA if the seller agrees to "the sale . . . of land under a contract obligating the seller . . . to erect [a residential] building thereon within a period of two years." 15 U.S.C. §

13

1702(a)(2). The district court found that Princeton's alleged obligation to complete construction within two years was illusory because it was conditioned upon obtaining a building permit from the City of Port St. Lucie by an undetermined date, that such a condition is not the same as a condition based on impossibility or *force majeure*, and that limiting construction to 210 working days is ambiguous. We agree.

We look to both federal and state law to determine whether the purchase agreement qualifies under the § 1702(a)(2) exemption from the ILSFDA. *Stein v. Paradigm Mirasol, LLC*, 586 F.3d 849, 854 (11th Cir. 2009). We interpret the ILSFDA using principles of federal statutory construction because it is a federal statute. *Id.* "Florida law will inform us about the extent and nature of [Princeton's] legally enforceable obligation to fulfill its contractual promise to complete construction within two years." *Id.* A contract is illusory under Florida law when "one of the promises appears on its face to be so insubstantial as to impose no obligation at all on the promisor—who says, in effect, 'I will if I want to.'" *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1311 (11th Cir. 1998) (citation and quotation omitted). Here, Princeton's obligation to complete construction within 210 working days, which is conditioned upon Princeton obtaining a building permit from the city of Port St. Lucie, is

14

illusory.  *See Santidrian v. Landmark Custom Ranches, Inc.*, 655 F. Supp. 2d 1260, 1264 (S.D. Fla. 2009) (holding that an obligation to complete construction within "two years from the date Seller obtains a building permit from the appropriate governmental authority" was illusory (citation omitted)).

In *Santidrian*, the district court for the Southern District of Florida stated that the clause at issue was distinguishable from non-illusory clauses because "the two year period does not begin until Seller obtains a building permit, which could also delay completion beyond two years due to factors within Seller's discretion." *Id.* at 1265.  We find this reasoning to be persuasive.  Additionally, where the seller is exempt under § 1702(a)(2), the two year construction period unambiguously begins on the exact date the contract or agreement is executed. *See, e.g.*, *Stein*, 586 F.3d at 857 ("Construction of the condominium unit will be complete and ready for possession within two (2) years from the execution of this Purchase Agreement" (citation and quotation omitted)); *Jankus v. Edge Investors, Ltd. P'ship.*, 650 F. Supp. 2d 1248, 1250 (S.D. Fla. 2009) ("Seller agrees to substantially complete construction of the Unit . . . by a date no later than two (2) years from the date Buyer signs this Agreement" (citation and quotation omitted)). Thus, the obligation to complete construction within two years begins on a definite and predetermined date, whereas here, there was no way to measure exactly what

day Princeton would obtain a building permit in order to begin the 210-day construction obligation.

Princeton's obligation to complete construction within 210 working days conditioned upon obtaining a building permit is also not a permissible condition under the principle of *force majeure*. A permissible *force majeure* clause "covers events that may or may not happen, but whether they do is 'beyond the control of the Seller.' This type of clause is not an opt-out provision; it is limited in scope." *Stein*, 586 F.3d at 858. We have held that *force majeure* clauses broader than the scope of impossibility are enforceable. *Stein*, 586 F.3d at 857 & n.6 (finding *force majeure* clause which stated, "Seller shall not be responsible for any delay caused by acts of God, weather conditions, restrictions imposed by any governmental agency, labor strikes, material shortages or other delays beyond the control of the Seller" to be enforceable). The conditional clause here is not a permissible *force majeure* clause because obtaining a building permit is not beyond Princeton's control or an unforeseeable obstacle that would prevent Princeton from completing construction within 210 working days.

Further, we agree with the district court's reasoning and conclusion that Princeton's obligation to complete construction within 210 working days is ambiguous because it is "too dependent on [Princeton's] unilateral judgment as to

16

what constitutes a 'working day.'" Because Princeton's 210-day obligation to build the town home is conditioned upon obtaining a building permit from the city of Port St. Lucie and "working day" is ambiguous, it is illusory.

### B.    Exemption under 15 U.S.C. § 1702(b)(2)

Princeton argues that it is exempt from the requirement to provide the Virones with a property report pursuant to 15 U.S.C. § 1702(b)(2) because it did not sell more than twelve lots in St. Andrews Park within one year from the date of the first sale. It interprets a "sale" to occur at the time of closing.[4] Section 1702(b)(2) provides that "the provisions requiring registration and disclosure (as specified in section 1703(a)(1) of this title . . . ) shall not apply to . . . the sale or lease of lots in a subdivision if, within the twelve-month period commencing on the date of the first sale . . . of a lot in such subdivision . . . , not more than twelve lots are sold." The district court correctly held that generally, under the ILSFDA, a "sale" occurs at contract formation, relying on precedent that defines "sale" under other provisions of the ILSFDA and the Department of Housing and Urban Development guidelines, which conclude that a sale occurs at the time of contract formation. The district court also reasoned that a sale logically occurs at contract

---

[4] Princeton executed twenty-one contracts of sale within one year from the date the first contract of sale was executed on October 17, 2005. Princeton closed on eleven town homes within one year from the date of the first closing on May 17, 2006.

17

formation because it furthers the purpose of the ILSFDA, which is to encourage disclosure *before* a buyer completes a purchase. *See Law v. Royal Palm Beach Colony, Inc.*, 578 F.2d 98, 99 (5th Cir. 1978) (citation omitted).

In interpreting the meaning of the exemption under 15 U.S.C. § 1702(b)(2), "we must begin . . . with the language of the statute itself." *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc) (citation and quotation marks omitted). Further, if the statute does not define its terms, they are given their ordinary meaning. *Stein*, 586 F.3d at 854 (citations omitted). Section § 1702(b)(2) does not define "sale." And, we lack precedent defining "sale" as that term is used in the context of § 1702(b)(2); however, in *Winter v. Hollingsworth Properties, Inc.*, we held that for "the purposes of the ILSFDA the 'sale' takes place at the time the purchaser signs the contract and incurs an obligation. This is a necessary result to ensure that the Act's purpose is fulfulled; the buyer must receive the information necessary to make his decision prior to the purchase commitment." 777 F.2d 1444, 1449 (11th Cir. 1985) (internal citations omitted). Further, the *Winter* Court held that "[r]eal estate contracts frequently call for a long period of installment payments with title not being transferred until the entire amount is paid. It would frustrate the intent of the [ILSFDA] to say that no sale takes place until title is

18

transferred." *Id.*[5]

Finally, a violation of § 1703(a)(1) of the ILSFDA occurs at the execution of the sales contract. *See Law*, 578 F.2d at 100; *see also Fogel v. SellAmerica, Ltd.*, 445 F. Supp. 1269, 1275 (S.D.N.Y. 1978) (finding that the "activity which constitutes the 'sale' . . . must be the initial signing of the contract rather than the final payment of the purchase price"). In fact, the statute focuses on the moment when the contract of sale is signed. *Law*, 578 F.2d at 100 ("Section 1703(a)(1) unambiguously requires the seller to furnish a property report to the purchaser 'in advance of the signing of any contract or agreement for sale or lease by the purchaser' . . . ."). We agree with the district court's reasoning and conclusion that "sale" occurs at the time of contract formation for purposes of § 1702(b)(2). Therefore, because Princeton sold more than twelve lots within one year from the date of the first sale, Princeton was not exempt under § 1702(b)(2) from providing a property report to the Virones.

Because Princeton was not exempt under § 1702(a)(2) and (b)(2), it violated § 1703(a)(1) of the ILSFDA by failing to provide the Virones with a printed

---

[5] Several of our sister circuits have agreed with this interpretation of "sale" generally under the ILSFDA. *See Markowitz v. Ne. Land Co.*, 906 F.2d 100, 104 (3d Cir. 1990) ("We agree with the other circuits that have examined the issue that for purposes of the Act the sale occurs when the purchaser signs the sale agreement and incurs an obligation." (citing *Yeomans v. Le Triomphe P'ship*, 884 F.2d 847, 849 (5th Cir. 1989); *Winter*, 777 F.2d at 1449; *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1043–44 (10th Cir. 1980)).

property report.[6]  For these reasons, we affirm the district court's grant of summary judgment to the Virones because Princeton violated Florida Statute § 720.401 and the ILSFDA, 15 U.S.C. § 1703(a)(1).

**AFFIRMED.**

---

[6] Princeton argues that the Virones cannot recover under the ILSFDA because it elected its remedy under Florida Statute § 720.401.  The district court was correct in finding that the doctrine of election of remedies does not apply because even though the remedies are consistent, the doctrine of election of remedies only applies after one of the remedies has been satisfied. *See Macola v. Gov't Employees Ins. Co.*, 410 F.3d 1359, 1364 (11th Cir. 2005) (per curiam) (Under Florida law, "[a]ll consistent remedies may in general be pursued concurrently even to final adjudication; but the satisfaction of the claim by one remedy puts an end to the other remedies." (citation omitted)).  Here, recovery of damages under the ILSFDA is not inconsistent with recovery under Florida Statute § 720.401.  There is no evidence that the Virones' claim for damages under Florida Statute § 720.401 has been satisfied; therefore, the doctrine of election of remedies is inapplicable.