[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-15591
Non-Argument Calendar
_____

D. C. Docket No. 8:10-cv-00260-RAL-TGW

MOSAIC FERTILIZER, LLC,
a Delaware Limited Liability Company,

Plaintiff-Counter
Defendant-Appellee,

versus

VAN FLEET INTERNATIONAL
AIRPORT DEVELOPMENT GROUP, LLC,
a Florida Limited Liability Company,

Defendant-Counter
Claimant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 15, 2012)

Before TJOFLAT, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

This case involves an option contract to purchase real estate in Hardee County, Florida. Defendant Van Fleet International Airport Development Group, LLC ("Van Fleet"), as buyer, exercised the option to purchase the property but then failed to close the sale. The owner and seller of the land—Plaintiff Mosaic Fertilizer, LLC ("Mosaic")—sued Defendant Van Fleet for breach of contract and to quiet title to the land. The district court granted summary judgment to Plaintiff Mosaic and awarded $25,000 in liquidated damages against Defendant Van Fleet, as provided for in the option agreement. Defendant Van Fleet appeals. After review, we affirm.

## I. BACKGROUND

### A. The Parties and the Option Agreement

Plaintiff Mosaic is the fee-simple owner of approximately 22,441 acres of land in Hardee and Polk Counties in Florida. Mosaic received its interest in the property from IMC Phosphates Company ("IMC").

Defendant Van Fleet is a subsidiary of Star-Land Development Group ("Star-Land"). John Reed controls both Defendant Van Fleet and Star-Land.

In March 2003, Defendant Van Fleet entered into an Option Agreement with IMC, which granted Van Fleet an exclusive option to purchase the property at

2

favorable prices.   Plaintiff Mosaic is the successor-in-interest to IMC's rights under the Option Agreement.

The Option Agreement between Plaintiff Mosaic (as seller) and Defendant Van Fleet (as buyer) divides the property into five parcels (denominated Areas 1 through 5).  Area 1 comprises 10,347 acres in Hardee County.  The Option Agreement requires Defendant Van Fleet to purchase Area 1 first, by exercising the option as to Area 1 by no later than March 17, 2009.  Based on the acreage calculations in Exhibit C to the Option Agreement, the estimated purchase price of Area 1 was $7.5 million plus closing costs.[1]

After exercising the option, Van Fleet would be required to (1) obtain a survey of Area 1 from a Florida registered surveyor and (2) close on Area 1 within 60 days.  Van Fleet's failure to close timely on Area 1 would terminate the Option Agreement and entitle Mosaic to Van Fleet's $25,000 deposit as liquidated damages.  The Option Agreement provides that time is of the essence for each time and date specified in the agreement.

**B. Van Fleet Exercises the Option and Then Defaults**

On March 13, 2009, Defendant Van Fleet notified Plaintiff Mosaic that it

---

[1] Approximately 2,943 of the acres in Area 1 are "clay settling areas," which are impoundments used to dewater clay, a byproduct of phosphate mining.  The Option Agreement sets a purchase price of $225 per acre within clay settling areas and conservation easements and $937.50 per acre for the remainder.

was exercising its option to purchase Area 1. Under the Option Agreement, Van Fleet had 60 days to obtain and deliver a survey of Area 1 and to close the sale.

On April 28, 2009, Wade Trim, Inc. ("Wade Trim")—Van Fleet's selected surveyor—sent Van Fleet's Reed a "Proposal for Surveying/Mapping Services Based on Hourly Fees." The proposal estimated a total fee of $85,000 for six to eight weeks of work and states, "Should you wish us to proceed, please return one signed copy of this agreement which will also serve as our notice-to-proceed." Van Fleet never executed the survey proposal. Wade Trim never commenced the survey.

On May 13, 2009—sixty days after Van Fleet exercised the option—Mosaic provided Van Fleet with notice of default. Mosaic's letter states that Mosaic was ready and willing to close on May 12, 2009, but Van Fleet failed to deliver a survey and to close on the purchase of Area 1. In accord with the Option Agreement, Mosaic gave Van Fleet 30 days to cure its default by delivering the survey and closing by no later than June 15, 2009. Van Fleet failed to close by June 15, 2009.

## C. District Court Proceedings

In January 2010, Plaintiff Mosaic sued Defendant Van Fleet for breach of the Option Agreement and to quiet title to Area 1. Van Fleet moved to dismiss the

4

complaint for improper venue, and the district court denied the motion.

Van Fleet answered and counterclaimed for breach of the Option Agreement, breach of the duty of good faith and fair dealing, specific performance, and a declaration interpreting the Option Agreement.

On September 30, 2011, Plaintiff Mosaic moved for summary judgment on all claims and counterclaims, and Defendant Van Fleet moved for partial summary judgment on its breach-of-contract claim. In a thorough order, the district court granted summary judgment for Mosaic and denied Van Fleet's motion for partial summary judgment. The district court entered a money judgment in favor of Mosaic for $25,000 (the amount stipulated as liquidated damages in the Option Agreement) and a judgment quieting Mosaic's title to Area 1. Van Fleet appealed.

## II. DISCUSSION

### A. Forum Selection Clause

Defendant Van Fleet argues that the district court should have dismissed this case for improper venue based on the forum selection clause in the Option Agreement.[2] Paragraph 24 of the Option Agreement states: "The parties hereto agree that venue for any action arising out of or connected with this Agreement shall be the counties in which the Property is located." (Emphasis added).

---

[2]"This court reviews a district court's construction of a contractual forum-selection clause de novo." Slater v. Energy Servs. Grp. Int'l, Inc., 634 F.3d 1326, 1329 (11th Cir. 2011).

Van Fleet argues that this forum selection clause limited venue to the Circuit Court for Hardee County because there is no federal district court in Hardee County. However, as the district court noted, the forum selection clause is mandatory but does not expressly limit venue to the state circuit court for Hardee County. See Global Satellite Commc'n Co. v. Starmill U.K. Ltd., 378 F.3d 1269, 1274 (11th Cir. 2004) ("If Global Satellite intended to permit suit only in the state courts of Florida located in Broward County, as it claims, it could easily have stated that intention precisely."). Rather, the clause refers to the location of the property and not to the type of court. Here, the property in question is in Hardee and Polk Counties, and both counties are in the Tampa Division of the U.S. District Court for the Middle District of Florida. See 28 U.S.C. § 89(b) (stating that the Middle District of Florida includes Polk and Hardee Counties); M.D. Fla. Local Rule 1.02(b)(4) (including Hardee and Polk Counties within the Tampa Division of the Middle District of Florida). Thus, we find no error in the district court's conclusion that the forum selection clause was satisfied.

## B. Breach of Contract Claims

Defendant Van Fleet next argues that the district court erred in granting summary judgment in favor of Plaintiff Mosaic on the parties' opposing claims for

6

breach of contract.[3]  After review of the record, we conclude that the district court properly granted summary judgment for Mosaic for several reasons.

First, although Van Fleet asserts an array of justifications for its failure to close the transaction by the deadline, Van Fleet undisputedly did not provide the requested survey.  Indeed, Van Fleet wholly fails to explain its failure to return Wade Trim's survey proposal and thereby commence the survey process.  Wade Trim expressly noted the sixty-day deadline to close and stated that the survey would take six to eight weeks to complete.  Yet Van Fleet never even bothered to sign the proposal, which would have served as Wade Trim's "notice-to-proceed." By failing even to commence the survey (which was necessary to determine the closing price for the transaction), Van Fleet defaulted on the Option Agreement irrespective of Mosaic's purported breach by failing to address Van Fleet's title concerns.  Van Fleet's failure to sign the survey proposal also negates any argument that Mosaic breached the Option Agreement by obstructing the survey process; Wade Trim never commenced the survey because Van Fleet never gave it notice to proceed, not because Mosaic prevented Wade Trim from conducting the survey.

---

[3]"We review a grant of summary judgment <u>de novo</u>, applying the same legal standards that bind the district court." <u>Storfer v. Guarantee Trust Life Ins. Co.</u>, 666 F.3d 1277, 1278–79 (11th Cir. 2012) (internal quotation marks omitted).

Second, to succeed on its own claim for breach of the Option Agreement, Van Fleet had to show that it was ready, willing, and able to close. As the district court found, Van Fleet undisputedly did not have the cash to close the transaction; Van Fleet had outstanding liabilities exceeding $7 million. Due to its insolvency, Van Fleet had to show a "binding commitment" from a "financially able third party" willing to commit the necessary funding to close the transaction. Hollywood Mall, Inc. v. Capozzi, 545 So. 2d 918, 920–21 (Fla. 4th DCA 1989).

To show it had adequate financing, Van Fleet relied on a May 8, 2009 letter from Robert Gries of Gries Investment Funds in which he conditionally committed to loan $8 million to Van Fleet. However, as the district court found, this "commitment" was illusory because Gries retained the absolute discretion to decide whether to fund the proposed loan, and Gries could decline to fund the loan for any reason, even any arbitrary one.[4] Accordingly, Gries's conditional commitment letter represented, at best, an illusory and nonbinding commitment to decide whether to fund a loan in the future. See Princeton Homes, Inc. v. Virone,

---

[4]In the letter, Gries charged an $80,000 commitment fee due at closing and conditioned the loan on Gries's "review and approval, which approval may arbitrarily be withheld, of all approvals heretofore obtained by [Van Fleet] in connection with its contemplated development" of the project. In a paragraph titled "Additional Conditions to Closing," the commitment letter states that Gries "shall not be obligated nor required to close this loan until it has received and approved, which approval may arbitrarily be withheld," numerous documents relating to zoning, environmental and regulatory compliance, and indemnification from any claim by Mosaic against Gries. Van Fleet was required to supply all of these documents at least 25 working days prior to any projected or final closing date.

8

612 F.3d 1324, 1331 (11th Cir. 2010) ("A contract is illusory under Florida law when one of the promises appears on its face to be so insubstantial as to impose no obligation at all on the promisor—who says, in effect, 'I will if I want to.'" (internal quotation marks omitted)).[5]

Van Fleet's allegations of bad faith and anticipatory breach appear to be nothing more than a belated attempt to manufacture a dispute for litigation. The undisputed facts in the record show that Van Fleet's failure to perform was the direct and inevitable result of its own inability to pay the $7.5 million purchase price and its failure to retain a surveyor and pay the required deposit. When it exercised the option, Van Fleet had more than $7 million in outstanding liabilities and only illusory prospects of raising the capital necessary to close the transaction. In other words, the undisputed facts show that Van Fleet breached the agreement by failing to commission the survey required to set the purchase price for Area 1 and by failing to close the sale within the sixty-day deadline. Accordingly, the

---

[5]In its reply brief, Van Fleet argues that it showed an ability to close because an investor named Robin Moore orally agreed to put $8 million in escrow to prove Van Fleet's ability to close "if something happened with Gries." Van Fleet abandoned this argument by failing to raise the argument in its initial brief on appeal. See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004). In any event, Moore's alleged promise to put $8 million in escrow was similarly illusory and nothing more than a gratuitous promise. There is no record evidence that Moore sought any consideration in return for the "commitment," nor is there any other indication of a legally binding commitment to loan $8 million. See Taylor v. Richards, 971 So. 2d 127, 130 (Fla. 4th DCA 2007) (holding that a friend's "gratuitous promise" to fund a loan did not qualify as a "binding commitment" because there was "no proof of consideration or other indications of a legally binding commitment").

9

district court properly granted summary judgment for Plaintiff Mosaic on the parties' opposing claims for summary judgment.

## C. Refusal to Extend Discovery Deadline

Van Fleet next argues that the district court erred in denying Van Fleet's last-minute motion to extend the discovery deadline.  However, the district court denied the motion for the reasons stated on the record at a September 9, 2011 hearing, and Van Fleet failed to request the transcript of that hearing.  By failing to order the transcript, Van Fleet waived the issue and we cannot review it.  See Fed. R. App. P. 10(b)(2) ("If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all evidence relevant to that finding or conclusion."); Pensacola Motor Sales Inc. v. E. Shore Toyota, LLC, __ F.3d __, No. 10-15761, 2012 WL 2345117, at *9 (11th Cir. June 21, 2012) ("Under the 'absence equals affirmance' rule, the burden is on the appellant to ensure the record on appeal is complete, and where a failure to discharge that burden prevents us from reviewing the district court's decision we ordinarily will affirm the judgment." (internal quotation marks omitted)).

## III. CONCLUSION

For all of these reasons, we affirm the district court's October 26, 2011

10

summary judgment order and October 27, 2011 judgment.

**AFFIRMED.**

11