[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 14-11106

————————————————

D.C. Docket No. 1:13-cv-20708-RSR,
Bkcy No. 11-bkc-03122-AJC

In Re: SAGAMORE PARTNERS, LTD.

Debtor.

_____

JPMCC 2006-LDP7 MIAMI BEACH LODGING, LLC, et al.,

Appellants - Cross-Appellees,

versus

SAGAMORE PARTNERS, LTD.,

Appellee - Cross-Appellant.

————————————————

Appeals from the United States District Court
for the Southern District of Florida

————————————————

(August 31, 2015)

Before JORDAN, JULIE CARNES, and LINN,[*] Circuit Judges.

_____

[*] Honorable Richard Linn, United States Circuit Judge for the Federal Circuit, sitting by designation.

LINN, Circuit Judge:

JPMCC 2006-LDP7 Miami Beach Lodging, LLC ("JPMCC"), Berkadia Commercial Mortgage, LLC ("Berkadia"), LNR Partners, LLC ("LNR"), Wells Fargo Bank, N.A., and U.S. National Bank Association (collectively "appellants") appeal the district court's judgment affirming the bankruptcy court's Order Confirming the Amended Plan of Reorganization of Sagamore Partners, Ltd. ("Sagamore") but vacating and remanding the bankruptcy court's denial of attorney's fees and costs. *See In re Sagamore Partners, Ltd., Bankruptcy Appeals*, 512 B.R. 296 (S.D. Fla. 2014) ("Op."); *In re Sagamore Partners, Ltd.*, No. 11-37867-AJC (Bankr. S.D. Fla. Jan. 10, 2013); *In re Sagamore Partners, Ltd.*, No. 11-37867-AJC (Bankr. S.D. Fla. Dec. 26, 2012) ("Bankruptcy Op."). Appellants claim that the district court erred in affirming the bankruptcy court's finding that they are not entitled to default-rate interest; in affirming the bankruptcy court's finding that Sagamore's reorganization plan is feasible; and in failing to address their rights to fees and costs incurred in connection with Sagamore's bankruptcy. Appellants request that, should this Court find that they are entitled to default-rate interest, it further declare that the interest is due immediately. Sagamore cross-appeals the district court's conclusion that the Bankruptcy Code could ever require a debtor to pay default-rate interest to reinstate the original terms of a loan and the

2

district court's reversal of the bankruptcy court's holding that JPMCC's faulty notice precludes appellants from receiving default-rate interest. Finally, Sagamore argues that equitable mootness precludes appellate review.

Because the district court correctly ruled that a debtor may be required to pay default-rate interest to reinstate the original terms of a loan but erred in concluding that appellants waived their rights to default-rate interest, because the district court was correct that JPMCC's notice of default did not preclude default-rate interest, and because this appeal is not equitably moot, we reverse the district court's determination that appellants are not entitled to default-rate interest. Because the bankruptcy court did not err in concluding that Sagamore's plan was feasible, we affirm the district court's approval of Sagamore's plan. Because the courts below have not yet addressed the question of whether appellants are entitled to the fees and costs incurred in connection with Sagamore's bankruptcy and have not yet addressed the question of when Sagamore is required to pay default-rate interest, we remand these questions to the district court to address in the first instance.

## BACKGROUND

Sagamore owns the eponymous hotel. Martin Taplin ("Taplin") indirectly owns or controls a 100% interest in the Sagamore Hotel. In 2006, Arbor

3

Commercial Mortgage, LLC ("Arbor") loaned Sagamore $31.5 million to refinance the hotel. The details of the loan are set out in a promissory note (the "Note") and in a related loan agreement (the "Agreement"). Arbor assigned the Note and Agreement to JPMCC.

As relevant here, the Agreement required Sagamore to make interest-only payments of 6.54% per year until 2016, when all outstanding amounts would come due. However, in the "Event of Default," Sagamore would be required to pay a default-rate interest of 11.54%. An "Event of Default" would occur if Sagamore missed "any regularly scheduled payment with respect to any portion of the Debt when due." The Agreement states that any "required or permitted" notice to Sagamore must be addressed to Sagamore's Florida address with a copy sent to Sagamore's New York counsel. The agreement also recites that Sagamore "expressly waives, and shall not be entitled to any notices of any nature whatsoever from Lender" except for those notices that the Agreement or applicable law expressly require. The parties agree that the Agreement does not require JPMCC to provide a notice of default. The Note provides that if there is an Event of Default, "regardless of whether or not there has been an acceleration of the indebtedness[, default-rate] interest shall accrue."

4

Beginning in August of 2009, Sagamore stopped making its payments.  On September 28, 2009, JPMCC sent a letter to Sagamore, but not to its New York counsel, declaring that Sagamore was in default.  On November 19, 2009, JPMCC sent a letter to Sagamore and its New York counsel accelerating the obligation to repay the loan.  Upon Sagamore's failure to cure the default, JPMCC commenced a foreclosure action in state court in December of 2009.  Sagamore filed for bankruptcy on October 6, 2011.

In February of 2012, JPMCC filed a Proof of Claim demanding "$31,500,000.00, interest from July 11, 2009, default interest, late charges, costs, attorneys' fees, expenses, and all other charges and amounts accruing and imposed pursuant to the Loan Documents."  In response, Sagamore filed a Plan of Reorganization in which it sought to cure and "nullify[] all consequences of any alleged default" by paying the accrued pre-default-rate interest.  JPMCC objected that the plan did not allow for default-rate interest.  The Bankruptcy Court rejected the plan because it did not allow for default-rate interest, but noted that no default-rate interest would be due if Sagamore could show that its "default [should] be excused, or that default is not otherwise due in accordance with the underlying agreement and/or applicable non-bankruptcy law."  *In re Sagamore Partners, Ltd.*, No. 11-37867-BKC-AJC at 10 (July 10, 2012), ECF No. 213.

5

Sagamore then filed an amended plan, which proposed a fund that would "have all of the funds required to reinstate the indebtedness, whatever that amount is, as determined by the Court, and on the terms and conditions imposed by the Court." In connection with the amended plan, Sagamore also filed an objection to JPMCC's Proof of Claim in which it argued that it did not owe default-rate interest, because JPMCC demanded late fees and a creditor is not entitled to both default-rate interest and late fees. JPMCC responded by waiving late fees "for any time period for which the Court allows default rate interest." JPMCC Response to Objection to Claim at 3, *Sagamore*, No. 11-37867-AJC (Bankr. S.D. Fla. Jan. 10, 2013), ECF No. 400; *accord id.* at 5 n.4, 20.

The difference between late fees and default-rate interest in this case is substantial. The late fees total less than a quarter of a million dollars while the default-rate interest is almost five and a half million dollars. The bankruptcy court ruled in favor of Sagamore. It found that JPMCC's notice of default was defective, and that "all that flowed from the defective Default Notice is improper," including JPMCC's acceleration letter, Sagamore's subsequent foreclosure and appellants' efforts to charge default-rate interest, attorneys' fees and other costs. Bankruptcy Op. at 8–9. In the alternative, the bankruptcy court found that JPMCC failed to demand default-rate interest, *id.* at 11–15, and, moreover, "having asserted its

6

entitlement to late fees, is precluded from also recovering default interest," *id.* at 15. Finally, the bankruptcy court rejected appellants' claim that the plan of reorganization was not feasible. *Id.* at 23.

On appeal from the bankruptcy court's order, the district court determined that the Event of Default occurred notwithstanding JPMCC's insufficient notice and therefore remanded to the bankruptcy court the question of whether appellants were entitled to a partial award of attorneys' fees and costs. Op. at 318–19. However, it affirmed the bankruptcy court's conclusion that appellants waived default-rate interest. *Id.* at 314–17. Finally, the district court affirmed the bankruptcy court's determination that Sagamore's plan was feasible. *Id.* at 320–21.

This Court has jurisdiction over both the appeal and cross-appeal pursuant to 28 U.S.C. §§ 158(d)(1), 1291 (2012), notwithstanding the district court's partial remand on the question of attorney's fees and costs, *see In re Porto*, 645 F.3d 1294, 1299 (11th Cir. 2011).

## ANALYSIS

### I.    Standard of Review

In bankruptcy cases, this Court reviews all the district court's determinations and the bankruptcy court's legal determinations *de novo*. *In re Gamble*, 168 F.3d

7

442, 444 (11th Cir. 1999). This Court reviews the bankruptcy court's factual findings for clear error, *id.*, even if the bankruptcy court adopted one party's proposed findings verbatim, *see Rhode v. Hall*, 582 F.3d 1273, 1282 n.5 (11th Cir. 2009). "The interpretation of a contract is a question of law that the court reviews *de novo*." *Ave. CLO Fund Ltd. v. Bank of Am., NA*, 709 F.3d 1072, 1077 (11th Cir. 2013) (citations omitted).

## II.    Default-Rate Interest

### A.    The Permissibility of Demanding Default-Rate Interest Under the Bankruptcy Code

Sagamore argues that even if appellants preserved their claim to default-rate interest, bankruptcy law does not allow a creditor to demand default-rate interest as a condition to reinstating the original terms of the loan. In support, Sagamore relies primarily on opinions issued by our sister circuits and other courts prior to the 1994 amendments to the Bankruptcy Code, and the corresponding legislative history for those amendments. Appellants respond that the 1994 amendments to the Bankruptcy Code entitle them to default-rate interest.

The Bankruptcy Code provides that, "[n]otwithstanding any otherwise applicable nonbankruptcy law, a plan shall . . . provide adequate means for the plan's implementation, such as . . . curing or waiving of any default." 11 U.S.C.

8

§ 1123(a)(5)(G) (2012).  Before 1994 "[t]he Code d[id] not define 'cure,'" so courts typically looked for guidance to § 1124's discussion of what constitutes an impaired claim.  *In re Entz-White Lumber & Supply, Inc.*, 850 F.2d 1338, 1340 (9th Cir. 1988); 11 U.S.C. § 1124.  Because that section was read as allowing a debtor, upon cure of default, to bypass contractual provisions extending additional relief to a creditor in the event of a default, some courts held that a debtor's cure of its default returned the parties to the "*status quo ante*," meaning that creditors lost any contractual right to recover default-rate interest.  *See, e.g.*, *id.* and *In re Madison Hotel Assocs.*, 749 F.2d 410 (7th Cir. 1984).

But in 1994, Congress enacted amendments to the Bankruptcy Code that, among other things, provided the previously missing definition of "cure."  *See* 11 U.S.C. § 1123(d).  In pertinent part, § 1123(d) states that, "[n]otwithstanding subsection (a) of this section . . . if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law."  Given this "straightforward statutory command" in § 1123(d), "there is no reason to resort to legislative history."  *United States v. Gonzales*, 520 U.S. 1, 6 (1997).  Therefore, we read the current iteration of the Bankruptcy Code to require a debtor to cure its default in accordance with the underlying contract or agreement, so long as that

9

document complies with relevant nonbankruptcy law. *See In re Southland Corp.*, 160 F.3d 1054, 1059 n.6 (5th Cir. 1998) ("Congress, in bankruptcy amendments enacted in 1994, arguably rejected the *Entz-White* denial of contractual default interest rates"); *but see Sylmar*, 314 F.3d 1070, 1075 (9th Cir. 2002) (holding that, with respect to 11 U.S.C. § 1129(a)(3), *Entz-White* remains good law). Accordingly, where, as here, "the underlying agreement" calls for default-rate interest and the "applicable nonbankruptcy law" permits it, a party cannot cure its default without paying the agreed-upon default-rate interest. Stated another way, because Sagamore's loan documents require the payment of default-rate interest and those provisions comply with Florida law, Sagamore must pay default-rate interest to cure its default. *See In re Sundale, Ltd.*, 410 B.R. 101, 105 (Bankr. S.D. Fla. 2009) (collecting state cases for the point that Florida law allows a lender to charge default-rate interest).

We recognize that the requirements for reinstating the original terms of a loan under § 1123 may appear to be in some tension with the framework for determining when parties have the right to vote on a debtor's reorganization plan. Under the bankruptcy code, all "impaired" creditors, as a general matter, have a right to indicate whether they wish to accept or reject a reorganization plan, but a creditor whose claim is not "impaired" is "conclusively presumed to have accepted

10

the plan." 11 U.S.C. § 1126 (2012). Section 1124 describes two ways for a creditor's claim to be unimpaired: (1) if the proposed plan does not alter the legal rights of the claim, or (2) if, "notwithstanding any contractual provision or applicable law" allowing for default-rate interest, the plan "cures [the] default" (and fulfills certain other conditions not relevant here). Thus, under § 1124, any outstanding default-rate interest is ignored when determining whether a claim to a loan is impaired, but, as explained above, under § 1123, outstanding default-rate interest, if called for in the underlying agreement, precludes reinstating the original terms of the loan. "[T]his tension [merely] demonstrates that the Bankruptcy Code does not precisely equate curing a default [for the purposes of reinstating a loan] with unimpairment of a claim." *In re Moody Nat'l SHS Hous. H, LLC*, 426 B.R. 667, 676 n.5. (Bankr. S.D. Tex. 2010). It does not allow us to ignore the clear mandate of § 1123 that allows a creditor to demand default-rate interest as a condition for reinstating the loan.

## B.    Waiver

Appellants contend that the bankruptcy court clearly erred in its factual finding that they chose late fees over default-rate interest. They also argue for default-rate interest based on state and federal law. Sagamore responds that the

courts below properly found that appellants legally could, and actually did, choose late fees over default-rate interest.

We agree that appellants are entitled to default-rate interest. The bankruptcy court's contrary conclusion was based on two clearly erroneous findings. The first was its finding that appellants' claim for default interest "first surfaced . . . in February 2012." Bankruptcy Op. at 13.[1] This finding is contradicted by the record. JPMCC's Second Amended Complaint, filed in the foreclosure proceeding in November of 2010, demanded "default interest[,]" and Sagamore's answer directly addressed this demand by declaring that "default interest should be negated."

The bankruptcy court also clearly erred in finding that appellants "consistently assessed late fees and not default interest" throughout 2010 and 2011. Bankruptcy Op. at 13–14. The bankruptcy court relied on databases from LNR, the special servicer of the loan, and Berkadia, the master servicer of the loan, that only included late fees and not default-rate interest. *Id.* Though these programs automatically assessed late fees and not default-rate interest, the bankruptcy court found it significant that appellants never manually inputted the default-rate interest. *Id.* at 14–15. These databases, however, were internal documents—Sagamore only

---

[1] Sagamore continues to maintain this is true. *See* Resp. Br. at 26.

12

obtained them through litigation discovery.  As Sagamore conceded at oral argument, appellants never actually sent a single document to Sagamore (other than through discovery) that demanded late fees while omitting a claim to default-rate interest.[2]  It was clearly erroneous for the Bankruptcy Court to find that appellants' failure to manually update a database it believed would never see the light of day was a meaningful waiver.

The record clearly demonstrates that appellants first demanded both default-rate interest *and* late fees and later withdrew the claim to late fees.  The November, 2010 Second Amended Complaint and February, 2012 Proof of Claim demanded both default-rate interest and late fees.  After Sagamore objected that appellants could not receive both default-rate interest and late fees, appellants expressly and clearly waived their claim to all late fees "for any time period for which the Court allows default rate interest."

Further, under Florida law the claims for default-rate interest and late fees are consistent remedies because they are predicated upon the single factual assumption that Sagamore defaulted on its loan.  "Under Florida law, all consistent

_____

[2] We understand Sagamore's concession at oral argument as a tacit retraction of the statement in its brief that "[t]he foreclosure complaint filed by JPMCC . . . charged and sought to collect late fees but did not charge or seek to collect default rate interest," Resp. Br. at 21. Regardless, the foreclosure complaint did, in fact, demand "default interest."

13

remedies may in general be pursued concurrently even to final adjudication," so long as a party does not receive "satisfaction of the claim by one remedy." *Princeton Homes, Inc. v. Virone*, 612 F.3d 1324, 1334 n.6 (11th Cir. 2010) (citations omitted). In November of 2012, when appellants waived their claim to late fees, none of their claims had been finally adjudicated.

The district court seems to have attached significance to the fact that JPMCC paid late fees. *See* Op. at 318. Yet, appellants note that they only accepted this payment under protest. *See* Appellants' Br. at 48. Sagamore does not dispute this. Payment accepted under protest cannot be the basis of a waiver. *See Klein v. Grynberg*, 44 F.3d 1497, 1502–03 (10th Cir. 1995).

Given the above facts, appellants are entitled to default-rate interest. Because appellants have properly preserved their claim to default-rate interest and have waived any claim to late fees, we need not, and do not, address whether a creditor could ever demand both default-rate interest and late fees.

## C.    The Sufficiency of the Notice of Default

In its cross-appeal, Sagamore argues that the bankruptcy court was correct to conclude that appellants are precluded from recovering default-rate interest because they did not send a copy of the September, 2009 letter to Sagamore's New York counsel. Appellants respond that the district court properly found that the

14

faulty notice of default was legally irrelevant, because no notice of default was required.

We agree with the district court. The Agreement does not require that Sagamore provide any notice of default and "expressly waives" any notice not explicitly called for by the Agreement or applicable law. Moreover, the letter of September, 2009 expressly stated that it did not "constitute[] a waiver, modification, relinquishment or forbearance by [JPMCC] of any right or remedy under the Loan Documents."

### D.    Equitable Mootness

Sagamore argues that we cannot review the confirmation plan because it is equitably moot. According to Sagamore, the plan has been substantially consummated and it would be nearly impossible to change the plan at this stage. Appellants respond that relief is available because Taplin has sufficient funds and because the amended plan already allows for default-rate interest.

Equitable mootness applies when "effective relief is no longer available." *In re Club Assocs.*, 956 F.2d 1065, 1069 (11th Cir. 1992) (citations omitted). Requiring Sagamore to pay default-rate interest is effective relief. Indeed, it does not even require revising Sagamore's amended plan, which already provides for

15

"funds required to reinstate the indebtedness, whatever that amount is, as determined by the Court, and on the terms and conditions imposed by the Court."

### III.    The Feasibility of Sagamore's Plan

The bankruptcy court found that Sagamore's proposed plan had a reasonable prospect of success based on Taplin's claim that he could refinance and make up any difference personally. The district court affirmed. Appellants contend that the courts below erred in finding that Sagamore's reorganization plan meets the requirements of 11 U.S.C. § 1129(a)(11) (2012). According to appellants, the plan is "likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, [and] such liquidation or reorganization is [not] proposed in the plan," *id.* Sagamore argues that the bankruptcy court properly found it reasonably likely that no further financial reorganization or liquidation would be necessary.

We agree with the courts below. Appellants do not show any error, let alone clear error, in the bankruptcy court's factual finding that Taplin could refinance or personally pay any outstanding debts. Accordingly, the plan is not reasonably likely to require liquidation or further financial reorganization and meets the requirements of § 1129.

16

## IV.    Issues Unaddressed by the District Court

Appellants ask us to find that they are entitled to fees and costs incurred prior to and in connection with Sagamore's bankruptcy.  They also ask us to rule that the default-rate interest is due immediately.  Sagamore argues that the district court's remand on the question of fees and costs is not final and not appealable.  It does not address the issue of when any default-rate interest may be due.

The issue of what fees and costs, outside of this appeal, are due to appellants and the issue of when any default-rate interest is due were not addressed by the district court and will not be addressed by this Court in the first instance.  These issues should be addressed on remand.

### CONCLUSION

For the foregoing reasons, the district court's decision affirming the bankruptcy court's denial of default-rate interest is reversed and the district court's decision that Sagamore's reorganization plan is feasible is affirmed.  As to the question of costs and fees relating to Sagamore's bankruptcy, the timing of payment of the default-rate interest, and any other remaining issues unresolved in this appeal, we remand the case to the district court, which in its discretion may remand any appropriate issues to the bankruptcy court for the bankruptcy court's resolution.

17

**AFFIRMED-IN-PART, REVERSED-IN-PART AND REMANDED**.