RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0140p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DAVID L. ENGLER, Administrator of the Estate of
Deceased T.F., a minor,

                Plaintiff-Appellant,

    *v.*

DAVID ARNOLD, individually,

                Defendant-Appellee.

No. 16-4201

---

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
No. 4:15-cv-02019—Sara E. Lioi, District Judge.

Argued: June 13, 2017

Decided and Filed: July 10, 2017

Before: MOORE, GILMAN and COOK, Circuit Judges.

---

## COUNSEL

**ARGUED:** David L. Engler, Youngstown, Ohio, for Appellant. Frank H. Scialdone, MAZANEC, RASKIN & RYDER, CO., L.P.A., Cleveland, Ohio, for Appellee. **ON BRIEF:** David L. Engler, Youngstown, Ohio, for Appellant. Frank H. Scialdone, MAZANEC, RASKIN & RYDER, CO., L.P.A., Cleveland, Ohio, for Appellee.

---

## OPINION

---

KAREN NELSON MOORE, Circuit Judge. T.F., a minor child, was abused and eventually killed by his stepfather. It is alleged that prior to T.F.'s death, Defendant David

Arnold, the Interim Executive Director of the Mahoning County Children's Services Board, received reports about this abuse, but did not investigate or cooperate with law enforcement, as was required by state statute. David L. Engler, as administrator of T.F.'s estate, filed suit under 42 U.S.C. § 1983 against Arnold, alleging substantive and procedural due-process violations. Arnold filed a motion for judgment on the pleadings, which the district court granted. On appeal, Engler argues that he should prevail under a state-created-danger theory because Arnold increased the risk of harm to T.F.

For the following reasons, we **AFFIRM** the district court's order granting Arnold's motion for judgment on the pleadings.

## I. BACKGROUND

Because we are reviewing a dismissal pursuant to Federal Rule of Civil Procedure 12(c), we accept as true all of the factual allegations contained in the complaint. *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006). On January 26, 2013, T.F., a minor child, died. The precise cause of T.F.'s untimely death is not apparent from the complaint, but the parties do not dispute that he was killed by his abusive stepfather. *See* R. 1 (Compl. at ¶ 5) (Page ID #2–3); Appellee's Br. at 3. The complaint alleges that prior to T.F.'s death, Arnold received reports that T.F. was being abused, but Arnold "concluded that T.F.'s injuries . . . were accidental and refused to report or investigate those allegations of abuse" and later "refused to cooperate with [police] officers" who were investigating these reports. R. 1 (Compl. at ¶ 4–5) (Page ID #2). Engler contends that "Arnold's inaction with regard to notification that T.F. was an abused child increased T.F.'s susceptibility to future violence and abuse." *Id.* at ¶ 4 (Page ID #2).

That is what we can glean from the complaint. But unfortunately, the four-page document filed by Engler is more remarkable for the facts it omits than for the ones it alleges. First, as noted above, we do not know the events that led to T.F.'s tragic death. We know only that T.F.'s stepfather caused his death, and from Arnold's answer, we know that T.F.'s mother and stepfather were incarcerated following a police investigation into T.F.'s injuries. R. 16 (Answer at ¶ 5) (Page ID #83).

Second, the complaint fails to explain the duration or extent of the abuse inflicted by T.F.'s stepfather. It details only one instance, which occurred two days before T.F.'s death, when "T.F. was admitted to the hospital suffering from, among other things, frost bite and serious bruises." R. 1 (Compl. at ¶ 5) (Page ID #2). According to Engler, T.F.'s stepfather forced him to stand outside in the cold at night without proper protective clothing. *Id.* Upon T.F.'s admission to the hospital, the police launched an investigation and learned from T.F.'s siblings that T.F. had been abused by his stepfather. *Id.*

Third, and most critically, although the complaint states that Arnold knew that T.F. was being abused when Arnold refused to investigate or to cooperate with the police, it does not explain the nature of those allegations and when they were brought to Arnold's attention. The complaint states only that Arnold "concluded that T.F.'s injuries . . . were accidental and refused to report or investigate those allegations of abuse." R. 1 (Compl. at ¶ 4–5) (Page ID #2). The complaint also states that later, after T.F.'s death, Arnold continued to deny that T.F. was an abused child and "knowingly prepared and disseminated a report stating that T.F.'s injuries were accidental." *Id.* at ¶ 5 (Page ID #3). According to Engler, this report was "designed to cover up [Arnold's] failures to act in accordance with Ohio law." *Id.*

On September 30, 2015, Engler, as administrator of T.F.'s estate, filed this 42 U.S.C. § 1983 action against Arnold, alleging that Arnold's inaction deprived T.F. of his procedural and substantive due-process rights under the Fourteenth Amendment. In response, Arnold filed an answer and a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The district court held that Engler had failed to state a claim of either a procedural due-process or a substantive due-process violation, and granted Arnold's motion. This appeal followed.

## II. ANALYSIS

### A. Standard of Review

We review de novo a district court's grant of a Rule 12(c) motion for judgment on the pleadings. *Kottmyer*, 436 F.3d at 689. "When ruling on a defendant's motion to dismiss on the pleadings, a district court 'must construe the complaint in the light most favorable to the

plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief.'" *Id.* (quoting *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001)). To survive a Rule 12(c) motion, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere labels and conclusions are not enough; the allegations must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## B. Substantive Due Process

The Due Process Clause of the Fourteenth Amendment does not impose on the state an affirmative duty to protect individuals against private acts of violence. *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). "The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *Id.* at 195. There are, however, two recognized exceptions to this general rule. First, a duty to protect may arise when an individual is placed in the custody of the state. *Id.* at 199–200. Engler does not allege that T.F. was ever put in state custody. Second, we have recognized a state-created-danger theory, whereby state actors may be held liable if their "affirmative acts . . . either create or increase the risk that an individual will be exposed to private acts of violence." *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998). To establish liability under the state-created-danger theory, a "plaintiff must show: 1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; 2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and 3) the state knew or should have known that its actions specifically endangered the plaintiff." *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003).

Whether conduct amounts to an "affirmative act" in this context is at times a difficult question. In *DeShaney*, the Court considered whether the state could be held constitutionally responsible for returning four-year-old Joshua DeShaney to the custody of his father, who

ultimately beat Joshua so severely that he fell into a coma and suffered permanent brain damage. 489 U.S. at 193. Although the state had actual knowledge that Joshua was an abused child, and although the decision to return Joshua may have been "active" in some sense of the word, the Court held that the state had no constitutional duty to protect Joshua because "when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all." *Id.* at 201. The Court noted that "[w]hile the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them." *Id.* In light of *DeShaney*, a plaintiff seeking to hold a state official liable for private acts must allege more than a failure to act. *Cartwright*, 336 F.3d at 493. He must point to conduct which either created or increased the risk of harm, and show not only that he could have been saved, but also that he was "safer *before* the state action than he was *after* it." *Id.*

To the extent that Engler claims that "Arnold's inaction," that is, his refusal to investigate or report allegations of abuse, is the conduct at issue, Engler has failed to state a claim. *See* R. 1 (Compl. at ¶ 4) (Page ID #2). A state official's failure to investigate or report allegations of child abuse does not constitute an affirmative act. *Langdon v. Skelding*, 524 F. App'x 172, 176 (6th Cir. 2013) (holding that "failing to remove a child from a foster home is not an affirmative act under the state-created danger exception" even where the officials' investigation revealed "obvious dangers" to the child's safety). Indeed, under *DeShaney*, even returning a child to an abusive home, without more, is insufficient to create a constitutional duty to protect. 489 U.S. at 201.

Although Engler's complaint asserts that Arnold "increased T.F.'s susceptibility to future violence and abuse," it fails to tell us how. R. 1 (Compl. at ¶ 4) (Page ID #2). The few facts the complaint does provide—which together span approximately two pages—tell us nothing about whether the abuse worsened or increased. We know very little about the extent or duration of the abuse, except that it included forcing T.F. to stand outside in the cold for so long that he had to be treated for frostbite. Other than this single incident, we have no basis of comparison. In fact, we do not know whether T.F. died as a result of these frostbite injuries, or from separate acts that occurred later. Even if we were to assume that T.F. suffered long-term abuse that increased in

severity, we could not know whether Arnold's actions contributed to that increase in harm because we do not know when Arnold became aware of the abuse. We therefore have no way to know whether T.F. was safer before Arnold's involvement than he was after it.

The only potential explanation that Engler provides, which was not alleged in his complaint, is that "Arnold's failure to take any action . . . could well have encouraged and emboldened T.F.'s abusive step-father." Appellant's Br. at 14. There may be scenarios where a state official increases the risk of harm by encouraging a violent actor to do something he would not otherwise have done. But there is no indication here that Arnold made such reassurances, or that T.F.'s stepfather was emboldened by a sense of impunity to kill T.F. In fact, we do not even know whether T.F.'s stepfather knew that *anyone* was aware of the abuse, let alone that Arnold determined that an investigation was unnecessary.

T.F.'s death was a tragedy. Although we are appalled by the sinister acts that led to his death, it was Engler's role, as T.F.'s representative, to present us with all of the facts that support his constitutional claim against Arnold. Plaintiffs who seek to hold state officials constitutionally liable on a "failure-to-protect" claim face a high burden under *DeShaney*.[1] Engler's complaint falls far short. An assertion of a failure to act does not support a state-created-danger theory, and we may not presume facts not presented. *See Kottmyer*, 436 F.3d at 689 (holding that the court "need not accept as true . . . unwarranted factual inferences"). Because Engler's complaint fails to state sufficient facts to support his substantive due-process claim, we affirm the district court's dismissal of this claim.

## C. Procedural Due Process

The district court held that Engler had abandoned his procedural due-process claim by failing to address it in response to Arnold's motion for judgment on the pleadings. R. 23 (Dist.

---

[1]Taking as true the few facts set forth in the complaint, Engler might have stated a claim for a state-law violation. *See* Ohio Rev. Code § 5153.16(A)(1) (requiring the public children-services agency to "[m]ake an investigation concerning any child alleged to be an abused, neglected, or dependent child"); Ohio Rev. Code § 2151.421(G)(1) (requiring the public children-services agency to "investigate, within twenty-four hours, each report of child abuse or child neglect that is known or reasonably suspected or believed to have occurred"). But that issue is not before us, and we do not decide it.

Ct. Order at 4) (Page ID #124).  On appeal, Engler argues that we should nonetheless consider this claim to avoid a miscarriage of justice.  Reply Br. at 9.

"[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citation omitted).  This court will hear claims previously waived only if failing to do so "would produce a plain miscarriage of justice or when there are exceptional circumstances that militate against finding a waiver." *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 615 (6th Cir. 2014) (internal quotation marks omitted).

Engler failed adequately to explain why we risk a plain miscarriage of justice in this case. He makes only the conclusory statement that "[i]t would be a miscarriage of justice under the circumstances of this case to refuse to decide whether appellant's Complaint alleges sufficient facts to state a procedural due process claim."  Reply Br. at 10.  No further explanation was given at oral argument.  Under these circumstances, we find no reason to disturb the district court's finding that Engler's procedural due-process claim was waived.

### III.  CONCLUSION

Based on the foregoing, we **AFFIRM** the district court's order granting Arnold's motion for judgment on the pleadings.