NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0522n.06

No. 22-3501

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 16, 2022
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| R.S., a minor child by his next of friend and legal guardian V.H.; T.H.,　　　Plaintiffs-Appellants,　v.　LUCAS COUNTY CHILDREN SERVICES; LUCAS COUNTY, OH, c/o Board of County Commissioners Tina Skeldon Wozniak, Pete Gerken, and Gary L. Byers, separately and individually and in their capacity as Lucas County Commissioner; KENNETH BUTLER; JANE/JOHN DOES, 1-20, individually and as Agents of Lucas County Children Services who are supervisors, managers, case workers, screeners, and other employees whose identities are unknown at this time; JANE/JOHN, DOES, individually and as tortfeasors and abusers whose identities are unknown at this time; ALEXIS FORTUNE; MARKUS FORTUNE; ALISA HAYNES, aka Alisa M. Stevenson; ANTHONY HAYNES, SR.; ANTHONY HAYNES, JR.; CORDELL JENKINS; LAURA LLOYD-JENKINS, individually in her capacity as Lucas County Administrator, and in her capacity as Board Member to Lucas County Children Services; GREATER LIFE CHRISTIAN CENTER; PILGRIM ASSETS, INC.; ABUNDANT LIFE MINISTRIES, INC.; MOUNTY HOPE CHURCH OF JESUS CHRIST (APOSTOLIC), ROAD TO SALVATION MINISTRIES, INC., CHARMAINE WEST, individually and in her capacity as case worker to Lucas County Children Services; SUSAN HICKEY, individually and in her capacity as case worker for Lucas County Children Services; REBECCA VON SACKEN; COURTNEY MOWERY, individually and in her capacity as case worker for Lucas County Children Services.　　　Defendants-Appellees. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO　　　OPINION |

No. 22-3501, *R.S., et al. v. Lucas County Children Servs., et al.*

Before: SUHRHEINRICH, CLAY, and DAVIS, Circuit Judges.

SUHRHEINRICH, Circuit Judge.    Plaintiffs R.S. and T.H. endured horrific sexual, physical, and emotional abuse at the hands of their legal custodians Anthony and Alisa Haynes. There is no doubt about the harm the children suffered: Anthony Haynes is serving a lifetime prison sentence for the sex trafficking and sexual exploitation of a minor.  The question here is one of secondary liability.  T.H. and R.S., through his mother, V.H., sued the Lucas County Children Services (LCCS) and individual LCCS employees, among others, to hold them accountable for placing them in the Hayneses' home.  The district court awarded the individual LCCS employees qualified immunity and dismissed Plaintiffs' claims on the pleadings.  We reverse the dismissal of Plaintiffs' substantive due process claim against the individual LCCS employees, vacate the grant of qualified immunity to the individual LCCS employees, and remand this case for further proceedings.

**I.**

These undisputed facts are taken from the pleadings, their attachments, and the juvenile court record.  V.H. has an "extensive history" with LCCS.  V.H. had her first child as a minor in the custody of LCCS.  Since 1996, LCCS has received "numerous" referrals for abuse-and-neglect regarding V.H.  Some of those concerns were substantiated.  V.H. who was a minor at the time, lost custody of her first child in 2000 after the child was adjudicated a dependent child.  She regained custody in 2008.  T.H. and R.S. are the second and third oldest of V.H.'s eight children. When the events in this case arose, T.H. and R.S. lived with V.H., their five younger siblings, and A.B., the father to their youngest two siblings.

On July 2, 2014, V.H. and A.B.'s six-week-old baby was admitted to the hospital with unexplained rib and clavicle fractures. That same day, LCCS and caseworker Defendant Rebecca Von Sacken opened an abuse-and-neglect investigation into V.H. and A.B. V.H. told Von Sacken that she might have hurt the baby's arm while bathing him. Von Sacken determined that all of the children should immediately be removed from V.H. and A.B.'s home and began investigating an alternative placement for them.

V.H. and A.B. suggested that the seven children be placed with their family pastor, Anthony Haynes, and his wife, Alisa Haynes. The Hayneses were what Ohio law calls "qualified nonrelatives" or "nonrelative adult[s] whom a child or the current custodial caretaker of a child identifies as having a familiar and longstanding relationship or bond with the child or the child's family that will ensure the child's social and cultural ties." Ohio Rev. Code § 5153.161(a). A child can be placed with a qualified nonrelative relatively quickly following a home visit, interview, and background check. *See* Ohio Admin. Code § 5101:2-42-18(B) (listing the qualified nonrelative approval criteria).

On July 9, 2014, Von Sacken visited the Hayneses' house to interview them and their three children. The Hayneses assured Von Sacken they would "do what they can to protect and assist [the] children." Anthony's and Alisa's criminal background checks turned up negative. But Von Sacken discovered that substantiated allegations of child sexual abuse had been made against Alisa in 2000 and 2003. And an "indicated" child sexual abuse allegation—one sustained by circumstantial evidence—was made against Alisa in 1999. Anthony was identified as an "other involved adult" in the 2003 allegation and was the subject of a 2004 unsubstantiated sexual abuse allegation. Despite these allegations against the couple, Von Sacken believed the Hayneses could provide the children with a "loving, nurturing[,] and safe environment."

On July 16, 2014, Von Sacken filed a juvenile court petition seeking the children's immediate removal from the home of V.H. and A.B. Von Sacken recommended that the juvenile court place the children with the Hayneses. After a July 17, 2014 hearing, the juvenile court granted the Hayneses temporary custody of the children. Defendant LCCS caseworker Susan Hickey informed the Hayneses they were approved as the children's qualified nonrelatives effective July 28, 2014.

On September 19, 2014, the juvenile court adjudicated the baby abused, dependent, and neglected and the remaining children dependent and neglected. The juvenile court granted the Hayneses permanent custody of the children in February 2015.

Life with the Hayneses was a waking nightmare for T.H. and R.S. T.H. recalled that Anthony Haynes raped her on a daily basis. And, twice per week, Anthony Haynes brought her to his church office where he raped her and forced her to perform oral sex on him. The Hayneses' son and their friends—Markus and Alexis Fortune—also raped or sexually assaulted T.H. at least six times. Markus Fortune raped R.S. at least twice. Alisa Haynes allegedly punched T.H. for revealing that Markus Fortune assaulted her.

V.H. visited her children at some point during the placement. She recognized markings suggestive of sexual abuse on at least one of her children and reported this to Defendant LCCS employee Courtney Mowery. Mowery allegedly emailed Hickey, but neither Hickey nor Mowery investigated V.H.'s claim.

LCCS staff did not intervene until October 2015. T.H. told one of her teachers that she did not have proper clothing, wore ill-fitting shoes, and re-wore dirty underwear because she only had three pairs. The school alerted LCCS. LCCS caseworker Defendant Charmaine West visited the Hayneses' house and found T.H., R.S., and two of their siblings living in squalid conditions in the

basement. Their dirty clothes were strewn about. One child slept on a dirty, urine-soaked twin-size mattress without sheets or blankets. R.S said he slept on a wooden board balanced on cinder blocks in the corner. The other two children slept on the concrete floor. LCCS petitioned for the children's immediate removal, and the juvenile court ordered them removed on November 4, 2015.

R.S. and T.H. sued LCCS, individual LCCS employees Von Sacken, Hickey, Mowery, and West, the Lucas County Board of County Commissioners and its individual commissioners, and a former Lucas County Administrator and LCCS board member (collectively, the Lucas County Defendants) for numerous constitutional and state law violations. Plaintiffs also sued the Hayneses, the Fortunes, several churches, a business that owned one of the churches, and two of the church's pastors (collectively, the state law Defendants) under state law. The Lucas County Defendants moved for judgment on the pleadings. The individual LCCS employees specifically argued Plaintiffs failed to state a plausible Fourteenth Amendment substantive due process claim and that they were entitled to qualified immunity.

The district court agreed. Applying *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 195 (1989), the district court determined that Plaintiffs were not in LCCS's custody, so it had no duty to ensure their safety during the Haynes placement. And, according to the district court, Von Sacken and the individual LCCS employees were not liable because "any allegations based on a failure to investigate cannot be considered affirmative acts constituting a state-created danger." The court noted that, under Ohio law, the juvenile court, not LCCS, issued the custody order. The district court dismissed Plaintiffs' remaining federal civil rights and state law claims against the Lucas County Defendants. And then it declined to exercise supplemental jurisdiction over Plaintiffs' outstanding claims against the state law Defendants. This made the district court's Rule 12(c) order final, and Plaintiffs timely appealed it.

**II.**

We review de novo a district court's grant of a Rule 12(c) motion for judgment on the pleadings. *See, e.g.*, *Moore v. Hiram Twp.*, 988 F.3d 353, 357 (6th Cir. 2021). In reviewing a Rule 12(c) motion, we may consider the pleadings, their attachments, and matters of public record without converting the motion into one for summary judgment. *See Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). "We assess a Rule 12(c) motion 'using the same standard that applies to a review of a motion to dismiss under Rule 12(b)(6).'" *Barber v. Charter Twp.*, 31 F.4th 382, 386 (6th Cir. 2022) (quoting *Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 659 (6th Cir. 2021)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[D]etailed factual allegations" are not necessary, but the complaint must contain "more than an unadorned, the-defendant-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

**III.**

Plaintiffs assert that they plausibly stated a substantive due process claim against the individual LCCS employees and the district court erred in affording them qualified immunity.[1] "Qualified immunity attaches when an official's conduct does not violate clearly established

---

[1] Plaintiffs choose to pursue this one claim on appeal and do not challenge the district court's dismissal of their remaining claims, including their claim that LCCS's official policy or custom caused their harm. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Although Plaintiffs' statement of issues generally refers the district court's grant of immunity to "Appellees" from their § 1983 claims, Plaintiffs only assign error to the district court's dismissal of their *DeShaney* claim against the individual LCCS employees. Because issues not raised in an opening appellate brief are forfeited, *see Scott v. First S. Nat'l Bank*, 936 F.3d 509, 522 (6th Cir. 2019), we address only on Plaintiffs' *DeShaney* claim and the district court's grant of qualified immunity to the individual LCCS employees.

statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam)). Two questions guide our qualified immunity inquiry: (1) whether the facts, viewed most favorably to the plaintiff, show a constitutional violation, and (2) whether the right was "clearly established" when the misconduct occurred. *Cochran v. Gilliam*, 656 F.3d 300, 306 (6th Cir. 2011).

### A. Constitutional Violation

We begin with what the Fourteenth Amendment's Due Process Clause does *not* require. The Due Process Clause limits "the State's power to act." *DeShaney*, 489 U.S. at 195. It "does not impose on the state an affirmative duty to protect individuals against private acts of violence." *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017). Rather, "[i]ts purpose was to protect the people from the State, not to ensure that the State protected them from each other." *DeShaney*, 489 U.S. 196.

There are two exceptions to this maxim. One arises when the plaintiff is harmed while in state custody. *See Lipman v. Budish*, 974 F.3d 726, 741 (6th Cir. 2020). Exception two is the state-created-danger theory. It allows a plaintiff to hold the state responsible for harm caused by a third party if:

> (1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its actions specifically endangered the plaintiff.

*Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003).

Plaintiffs contend the district court erred in finding neither exception applies. The state-created-danger theory is the better fit here, so we analyze Plaintiffs' case under that theory.

*See Lipman*, 974 F.3d at 743–47 (concluding a juvenile-plaintiff's estate pleaded state-created-danger claim against child services employees for harm she was exposed to in private custody).

### 1. Affirmative Act

"Whether conduct amounts to an 'affirmative act' in this context is at times a difficult question." *Engler*, 862 F.3d at 575. "[A] failure to act is not enough." *Lipman*, 974 F.3d at 744. The key "question is whether the individual 'was safer before the state action than . . . after it.'" *Jaskinski v. Tyler*, 729 F.3d 531, 539 (6th Cir. 2013) (quoting *Cartwright*, 336 F.3d at 493).

Plaintiffs plausibly allege that Von Sacken's actions were the catalyst that led to the children's harm. Von Sacken initially investigated V.H.'s suspected abuse of her baby and initiated removal proceedings. To place the children with the Hayneses, she conducted the statutorily-required home study and investigation and produced a report that noted—but did not explain because she failed to investigate—the sexual abuse allegations made against the Hayneses. *See* Ohio Admin. Code § 5101:2-42-18(B) (setting forth qualified non-relative placement approval criteria). She nevertheless petitioned the juvenile court to order the children's placement with the Hayneses. Through Von Sacken's efforts, Plaintiffs went from a neglectful (and in the baby's case, abusive) home to a living hell, which certainly meets the definition of an affirmative act. *See Jasinski*, 729 F.3d at 539.

Von Sacken claims that her sin is that of omission and is thus not actionable. She relies on our cases stating that a state official's failure to investigate or intervene, even knowing that abuse is occurring, is not an affirmative act. *See, e.g.*, *Langdon v. Skelding*, 524 F. App'x 172, 176 (6th Cir. 2013) (explaining that a child services agency's decision to close child abuse investigations and not remove child did not amount to an affirmative act); *see also Cartwright*, 336 F.3d at 493 (holding that police officers who picked up the plaintiff from "the shoulder of a dark, foggy"

highway and left him in a safer location did not take "an affirmative act under the state-created danger theory"). *But see Jasinski*, 729 F.3d at 540 (suggesting in dicta that child services agency's investigation and state's criminal prosecution of child abuser might have increased the risk of harm even without removal of the child). But in those failure-to-act cases, the state official never stepped in to change the victim's circumstances. Taking control and making a status-quo changing decision that leaves the victim less safe is an affirmative act. *See, e.g.*, *Bank of Ill. v. Over*, 65 F.3d 76, 78 (7th Cir. 1995) ("If the [child services] employees knowingly placed [the child] in a position of danger, they would not be shielded from liability by the decision in *DeShaney*."). And that is what happened here. Von Sacken initiated removal proceedings and recommended placement with the Hayneses despite the obvious potential for grave harm. *See Currier v. Doran*, 242 F.3d 905, 919 (10th Cir. 2001) ("When the state affirmatively acts to remove a child from the custody of one parent and then places the child with another parent, *DeShaney* does not foreclose constitutional liability.").

In accepting Von Saken's argument, the district court myopically focused on the juvenile court's role in the ordeal. It explained that the only affirmative act was the juvenile court's placement order, relying on our decision in *Pittman v. Cuyahoga County Department of Children & Family Services*, 640 F.3d 716, 729 (6th Cir. 2011). *Pittman* involved a father's claim that a social worker's recommendation against placement deprived him of his constitutional right to family integrity. *Id.* at 718–22, 729. We observed that only the juvenile court could deprive the father of his due process rights in this situation because "the juvenile court has the ultimate decisionmaking power with respect to placement and custody." *Id.* at 729. The social worker's negative characterization of the father's parental fitness might have influenced the juvenile court's determination, but the juvenile court's order deprived him of his parental rights. *Id.*

*Pittman* is also distinguishable. There, the social worker was accused of making a negative placement recommendation, not of making a faulty and dangerous recommendation based on inadequate investigation. *Id.* Here, the crux of Plaintiffs' claim is that Von Sacken failed to fully investigate known and documented allegations of prior child sexual abuse. Had Von Sacken brought the Hayneses' history of sexual abuse to the juvenile court's attention during the hearing, it is unimaginable it would have placed the children with the Hayneses. *See T.D. v. Patton*, 868 F.3d 1209, 1226 (10th Cir. 2017) (finding state created danger where a court placed a minor with the minor's father after child services worker withheld facts about the father's pattern of child sexual abuse).

### 2. Special Danger

Plaintiffs must plausibly show Von Sacken's actions "place[d] [them] specifically at risk, as distinguished from a risk that affects the public at large." *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998). This element is met when "the government could have specified whom it was putting at risk, nearly to the point of naming the possible victim or victims." *Jones v. Reynolds*, 438 F.3d 685, 696 (6th Cir. 2006). Plaintiffs' complaint plausibly alleges a special danger because only R.S., T.H., and their siblings were subject to Von Sacken's placement recommendation. *See Caldwell v. City of Louisville*, 120 F. App'x 566, 575 (6th Cir. 2004) (determining that state created danger exception applied precluding summary judgment and noting existence of evidence establishing that defendant was aware of "substantial risk of serious harm" caused by the state).

### 3. Deliberate Indifference

Plaintiffs must also plausibly allege Von Sacken acted with the requisite culpability to establish a constitutional violation. *See Arledge v. Franklin Cnty.*, 509 F.3d 258, 263 (6th Cir.

2007). We hold public officials to a deliberate indifference standard in situations that permit "reflection and unhurried judgments." *McQueen v. Beecher Cmnty. Schs.*, 433 F.3d 460, 469 (6th Cir. 2006) (quoting *Bukowski v. City of Akron*, 326 F.3d 702, 710 (6th Cir. 2003)). We have equated deliberate indifference with subjective recklessness, meaning "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Sperle v. Mich. Dep't of Corr.*, 297 F.3d 483, 493 (6th Cir. 2002)).

Von Sacken was *conscious* of the risk the Hayneses posed to the children because she documented it in her report. And, it hardly needs stating that placing children with known child abusers poses a horrible *risk* to children. Von Sacken *disregarded* that risk because she did not follow up on critical information before recommending the placement to the juvenile court.

The fact that V.H. volunteered the Hayneses as a placement option does not excuse Von Sacken's conduct. First and foremost, she was required to vet and approve the placement before recommending it to the juvenile court. The qualified nonrelative regulation does not say that a parent's recommendation and assent excuses that duty. *See* Ohio Admin. Code § 5101:2-42-18. Moreover, had LCCS made V.H. aware of the Hayneses' history, it is hard to believe that she would still have wanted them to parent her children. In fact, when she discovered signs of sexual abuse on one of her children, she called LCCS. Nonetheless, even if V.H. was negligent in consenting to the placement, this would make her a joint tortfeasor; not dispel Von Sacken's liability. *See K.H. ex rel. Murphy v. Morgan*, 914 F.2d 846, 849 (7th Cir. 1990) (noting that even if the child's parents were the *real* abusers, they would be joint tortfeasors with the state, but this would not excuse the state for placing the child in a foster home that it knew would be destructive of the health).

The fact that child abuse allegations (as opposed to convictions) are not automatically disqualifying under the qualified nonrelative regulation does not get Von Sacken off the hook either. After all, the essence of Von Sacken's job was to protect children from neglect and abuse. *See* Ohio Rev. Code § 2151.421(G)(1) (requiring that child services agencies "shall investigate, within twenty-four hours, each report of child abuse or child neglect"); Ohio Admin. Code § 5101:2-1-01(54) (defining a child services "[c]aseworker" as someone "responsible for provision of protective services or supportive services to the child"); *Mission/Vision*, Lucas County Children Services, https://lucaskids.net/mission-vision/ (last visited Dec. 15, 2022) ("Our mission is lead the community in the protection of children at risk of abuse and neglect.").

In sum, Plaintiffs have sufficiently pleaded facts to create the reasonable inference that Von Sacken violated their substantive due process rights. We therefore vacate the grant of qualified immunity to Von Sacken.

### 4. Remaining LCCS Employees

Because it determined that the juvenile court order was the only "affirmative act," the district court did not conduct an individualized qualified immunity analysis for Hickey, Mowery, or West. Since we have rejected that conclusion, we vacate the grant of qualified immunity to these Defendants and remand for individualized analysis. *See Schulkers v. Kammer*, 955 F.3d 520, 533 (6th Cir. 2020) ("When determining whether defendants are entitled to qualified immunity, 'we do not lump together each of the relevant government actors. Rather, we assess each actor's liability on an individual basis.'" (quoting *Jones v. City of Elyria*, 947 F.3d 905, 913 (6th Cir. 2020))).[2]

---

[2] Plaintiffs also sued LCCS board member Laura Lloyd-Jenkins in her individual capacity. They provided no allegations showing that she personally played any role in their abuse. She cannot be held liable under a respondeat superior theory. *See, e.g.*, *Zakora v. Chrisman*, 44 F.4th 452, 475 (6th Cir. 2022) ("A simple failure to act, without 'a

**B. Clearly Established**

We need not address the clearly established prong of the qualified immunity analysis because the individual LCCS employees did not raise it.

**IV.**

We **REVERSE** the grant of qualified immunity to Von Sacken and **VACATE** and **REMAND** the grant of qualified immunity to Hickey, Mowery, and West for further proceedings consistent with this opinion.

---

showing of "direct responsibility" for the actions of the individual officers,' will not suffice to establish supervisory liability."  (quoting *Hays v. Jefferson Cnty.*, 668 F.2d 869, 873–74 (6th Cir. 1982))).