NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0149n.06

Case No. 23-1452

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Apr 02, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| KENNETH BOYLE, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| FORD MOTOR COMPANY, | ) | MICHIGAN |
| Defendant-Appellee | ) | |
| | ) | OPINION |

Before: BOGGS, GILMAN, and NALBANDIAN, Circuit Judges.

**NALBANDIAN, Circuit Judge.** After Kenneth Boyle's brand-new RV, built atop a Ford Cutaway chassis, started pulling left, he spent roughly $1,000 fixing it. Boyle believes Ford's express warranty covers these costs, so he sued Ford on behalf of himself and a putative class. But Ford disagrees because the vehicle was modified by a third party after it left Ford's control. Boyle alleged (1) a breach of express warranty, as well as violations of (2) the Magnuson-Moss Warranty Act and (3) the Florida Deceptive and Unfair Trade Practices Act. The district court entered a judgment on the pleadings in Ford's favor, and Boyle timely appealed. The district court got it right on all claims, so we AFFIRM.

**I.**

In 2020, Plaintiff-Appellant Kenneth Boyle bought a recreational vehicle from General RV in Dover, Florida. The RV, manufactured by Thor RV, was built atop a 2021 Ford E-Series Cutaway, which Defendant-Appellee Ford Motor Company produced as an "incomplete vehicle," consisting of at least a "chassis (including the frame) structure, power train, steering system,

suspension system, and braking system," but requiring "further manufacturing operations to become a completed vehicle" such as a box truck, ambulance, or RV. 49 C.F.R. § 567.3.

Problems arose right away. Boyle's new RV "almost immediately" pulled left while driving. R.1, Compl., PageID 5. So with only 4,674 miles on the RV, he took it back to General RV, and they directed him to Bill Currie Ford Fleet Services. Currie fixed the alignment for $169, but the problem persisted. Boyle returned to Currie, which again fixed the RV, this time at no cost. But the vehicle continued to pull left, so Boyle contacted Thor RV. Thor RV directed Boyle to Ford: "[I]f the alignment did not cure the pull, then possibly it is something else and would need Ford to be involved" because "Ford holds the Warranty on the chassis." *Id.* at PageID 6. A few months later, Boyle took the RV to Gator Ford, which finally fixed the problem. Gator installed aftermarket parts, called bushings, to adjust the caster and camber of the vehicle, charging $855.43 for parts and installation.[1] The two aftermarket bushings cost $27.79 each.

Boyle believes that Ford must cover these costs. Ford provides a warranty that covers all its vehicles, including incomplete vehicles like the Cutaway. *See* R.18-2, 2021 Model Year Ford Warranty Guide. Two provisions are at issue. First, Ford does not cover damage caused by "Alteration or Modification," meaning that Ford "does not cover any damage caused by: alterations or modifications of the vehicle . . . after the vehicle leaves the control of Ford Motor Company." *Id.* at p.13, PageID 299. Second, Ford does not cover "Maintenance/Wear," so it won't cover "parts and labor needed to maintain the vehicle" nor "the replacement of parts due to normal wear and tear." *Id.* at p.15, PageID 301. But Ford will cover wheel-alignment issues

---

[1] Camber is the inward or outward tilt of the front tires. Caster is the fore or aft slope of the steering axis. Improper camber or caster split can cause the vehicle to pull in certain conditions.

caused by normal wear and tear "during the first 12 months or 12,000 miles in service, whichever occurs first." *Id.*

Based on the "Alteration or Modification" provision, Ford refused to pay for the work done on Boyle's RV because Thor modified the Cutaway after it left Ford's control. So Boyle sued Ford in 2022 on behalf of himself and a putative class under the Class Action Fairness Act, 28 U.S.C. § 1332(d).[2] Relevant to this appeal, Boyle alleged (1) a breach of express warranty and violations of (2) the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–2312, and (3) the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. §§ 501.201–.213. Ford moved for judgment on the pleadings as to all claims under Federal Rule of Civil Procedure 12(c), which the district court granted and entered judgment in Ford's favor. Boyle timely appealed.

## II.

When a district court dismisses a case under Federal Rule of Civil Procedure 12(c), we review de novo using the same standard as a dismissal under Rule 12(b)(6). *Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 659 (6th Cir. 2021). To "survive a Rule 12(c) motion, the 'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face,'" so "[m]ere labels and conclusions are not enough." *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). After

---

[2] Boyle described the class as "[a]ll persons who purchased or leased in the State of Florida a new completed vehicle utilizing a Ford E-Series Cutaway between 2018 and the date of class certification that required adjustment and/or modification to correct alignment within the first 12,000 miles after purchase." R.1, PageID 19. Boyle also alleges that he is "a resident of the State of Florida," Ford is a "a corporation organized and incorporated in the State of Delaware with its principal place of business and headquarters located [in] Michigan," and "at least one Class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs." *Id.* at PageID 4–5, 7. This gave the district court jurisdiction under 28 U.S.C. § 1332. And the district court had supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.

construing the complaint in the light most favorable to the nonmoving party, *id.* at 574, we look at whether the allegations contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678.

**III.**

Florida law governs Boyle's express-warranty claim.[3] "Florida courts generally treat warranties like contracts, where the terms of the warranty dictate the parties' respective rights and obligations." *Burns v. Winnebago Indus., Inc.*, 492 F. App'x 44, 48 (11th Cir. 2012). So a "manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 525 (1992). Also, under Florida law, "there can be no cause of action for breach of an express limited warranty unless the consumer can allege and prove that the manufacturer did not comply with the limited express warranty's terms." *Rastaedt v. Mercedes-Benz USA, LLC*, 63 So. 3d 41, 46 (Fla. Dist. Ct. App. 2011) (quoting *Ocana v. Ford Motor Co.*, 992 So. 2d 319, 324 (Fla. Dist. Ct. App. 2008)).

**A.**

Boyle's basic argument is that Ford's express warranty requires Ford to pay for tire-alignment maintenance. Ford promises to "replace or adjust certain maintenance items when necessary, free of charge during a limited period," including "[w]heel alignments and tire balancing . . . during the first 12 months or 12,000 miles in service." R.18-2, p.15, PageID 301. Boyle owned his RV for less than 12 months and only had 7,553 miles on it. So he argues that Ford must pay for his realignment expenses.

---

[3] R.27, Op. & Order, p.6, PageID 452 ("The parties agree that Plaintiff's warranty claims are governed by Florida law."); R.18-2, p.7, PageID 293 (providing that the "warranties contained in this booklet and all questions regarding their enforceability and interpretation are governed by the law of the state in which you purchased your Ford vehicle," which for Boyle was Florida).

Ford counters that its warranty excepts from coverage "any damage" caused by "alterations or modifications" once the vehicle leaves Ford's control. *Id.*, p.13, PageID 299. Because Thor RV altered the Cutaway after it left Ford's control—by building the Cutaway into a full RV—Ford contends that it is not liable for any alignment issues.

The district court found that Boyle's express-warranty claim fails because he did "not allege that the Cutaway was misaligned once it left the Ford factory, but that it became misaligned because of the modifications done by the final manufacturer, Thor RV." R.27, Op. & Order, p.7, PageID 453. For the following reasons, the district court got it right.

The "Alteration or Modification" provision governs here. Boyle urges us to apply the "Maintenance/Wear" provision, but he does not allege that his alignment issues were caused by normal wear and tear. To the contrary, Boyle repeatedly says that the Cutaway being "built out" caused the problems. *See* R.1, PageID 2–3 (alleging that the "vehicle cannot be aligned after it has been built out into its final use," and that "a Ford Cutaway that has been built out . . . will not track the road"); *Id.* at PageID 13 (alleging that as "the Ford Cutaway is loaded with more weight during the build-out process the suspension springs will, naturally, begin to carry the load," affecting the alignment); *Id.* at PageID 14–15 (referring to "added load of the completed vehicle" as the factor causing misalignment and claiming that "the Cutaway when in finished form, becomes nothing short of a chore to drive with constant 'pulling'").[4] So Boyle's own pleadings direct us to the warranty's "Alteration or Modification" language.

---

[4] To be charitable to Boyle, there is a way to read his Complaint as claiming that the alignment was defective when it left Ford's control. In Paragraph 4, Boyle alleges that "the Cutaway cannot accommodate the stated [gross vehicle weight rating] because Ford designed and manufactured the Cutaways with a suspension system that cannot be adjusted. Essentially, the vehicle cannot be aligned after it has been built out into its final use." *See* R.1, PageID 2. This could be read as asserting that the alignment is defective when it comes off Ford's factory line. But this would be cognizable only as a design-defect claim, which he doesn't assert.

Boyle's interpretation of the warranty would have us look only at the provision covering wear and tear and ignore the provision disclaiming alterations. But we must make sense of "the whole instrument" in a way that is "consistent with reason, probability, and the practical aspects of the transaction between the parties." *Macaw v. Gross*, 452 So. 2d 1126, 1127 (Fla. Dist. Ct. App. 1984). So we must harmonize the "Alteration or Modification" provision on the one hand with the "Maintenance/Wear" section on the other. *See City of Homestead v. Johnson*, 760 So. 2d 80, 84 (Fla. 2000) (relying on "the rule of construction requiring courts to read provisions of a contract harmoniously in order to give effect to all portions").

Context makes clear that the former addresses tire-alignment issues caused by third-party changes to the vehicle, while the latter addresses tire-alignment problems caused by normal wear and tear. Construing the "contract as a whole so as to give effect . . . to all provisions of the agreement," *Castro v. Mercantil Commercebank, N.A.*, 305 So. 3d 623, 626 (Fla. Dist. Ct. App. 2020) (alteration in original) (quoting *McArthur v. A.A. Green & Co. of Fla.*, 637 So. 2d 311, 312 (Fla. Dist. Ct. App. 1994)), the two provisions provide that neither alterations nor wear is covered—but for different reasons: Alterations are not covered because Ford cannot warrant what is out of its control, and wear is not covered, subject to a limited exception, because normal attrition will always lead to maintenance costs.

So under these sections, there are only two ways to show that Ford must cover the costs for alignment issues: either (1) the Cutaway's alignment was defective when it left Ford's control, or (2) the Cutaway's alignment was off because of normal wear and tear within 12 months or 12,000 miles. Fatal to Boyle's claim, he alleges neither. Indeed, just taking his Complaint at face

6

value, we see allegations that the issues arise once the vehicle is built out.[5] So under his own pleadings, his realignment costs are not covered by Ford's warranty. The district court was thus correct to dismiss this claim.

**B.**

Boyle argues that the above interpretation renders Ford's warranty "illusory" because then it does not cover the Cutaways at all since they are all incomplete vehicles that always require modification. Appellant Br. at 21. Because the "Alteration or Modification" provision is illusory, Boyle contends, the "Maintenance/Wear" provision must apply, thus requiring Ford to cover his maintenance costs.

"A contract is illusory under Florida law when one of the promises appears on its face to be so insubstantial as to impose no obligation at all on the promisor—who says, in effect, 'I will if I want to.'" *Princeton Homes, Inc. v. Virone*, 612 F.3d 1324, 1331 (11th Cir. 2010) (internal quotation marks omitted). These illusory promises often arise when one party guarantees something with no liability for failing to deliver. *See id.* at 1332 (holding illusory a promise to complete construction within 210 days if the builder obtains a permit); *see also Santidrian v. Landmark Custom Ranches, Inc.*, 655 F. Supp. 2d 1260, 1265 (S.D. Fla. 2009) (holding illusory a promise to finish construction within two years unless prevented by "other events beyond Seller's control"). So does Ford's warranty bind it to anything if the Cutaway is always modified?

---

[5] According to Boyle, concluding that the Complaint blames later manufacturers like Thor RV is an improper factual finding at this stage. And if the pleadings are vague about which company—Ford or Thor—caused the alignment issues, those facts must be construed against Ford. But the allegations require neither factual inferences nor are they vague—they are explicit in saying any that alignment problems occur after the vehicle leaves Ford's control. To say the issue occurs after the vehicle is built out is not inferring anything; it is taking Boyle at his word.

Yes. The warranty still holds Ford liable for any defects or problems that arise out of the Cutaway's construction before it leaves Ford. For example, if Ford sold a Cutaway with a defective brake system to Thor RV, then it would be liable for that manufacturing defect. But if Thor RV installed a faulty locking system on its RVs, Ford would not be liable for the bad locks. In short, the warranty still covers issues *caused by* Ford. Indeed, the warranty provides that "authorized Ford Motor Company dealers will, without charge, repair, replace, or adjust all parts on your vehicle that malfunction or fail during normal use during the applicable coverage period due to a manufacturing defect." R.18-2, p.9, PageID 295. The mandatory verb "will" rather than "may" puts Ford on the hook for any defects in the Cutaway's improper manufacturing. So this is not an "illusory promise" that "is so indefinite that it cannot be enforced, or by its terms makes performance optional or entirely discretionary on the part of the promisor." 17A Am. Jur. 2d Contracts § 125.

Here too, the district court got it right when it concluded that "the warranty does not exclude coverage for *all* problems that occur after the vehicle is modified, but only damage *caused by* alterations or modifications," so because "there are circumstances under which the warranty would provide coverage,"—instances where the Cutaway was defective when it left Ford's control—"it is not illusory." R.27, p.8, PageID 454 (internal quotation marks omitted).

## C.

Boyle also alludes to an argument under the Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. §§ 2301–2312, which "imposes certain requirements on manufacturers and merchants who choose to issue consumer warranties," *Kuns v. Ford Motor Co.*, 543 F. App'x 572, 575 (6th Cir. 2013). He argues that the district court erred in dismissing this claim. But Boyle does not develop this argument. *See* Appellant Br. at 2, 12–13, 27 (only mentioning the MMWA in the

8

statement of the issues, summary of the argument section, and the conclusion). So it is forfeited. *See, e.g.*, *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 946 (6th Cir. 2022) (explaining that issues "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation" are forfeited (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997))).

Regardless, the MMWA and express-warranty claims rise and fall together. If there is no breach of express warranty, there is no MMWA violation. *See Kuns*, 543 F. App'x at 575–76; *Hunter v. Rhino Shield*, No. 21-3748, 2022 WL 2952583, at *7 (6th Cir. July 26, 2022). Because Boyle's express-warranty claim fails, the district court also properly dismissed his MMWA claim.

**IV.**

We next consider Boyle's claim under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA). Florida law "declare[s] unlawful" any "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. Ann. § 501.204. So a successful FDUTPA claim comprises three elements: "1) a deceptive act or unfair practice; 2) causation; and 3) actual damages." *Stewart Agency, Inc. v. Arrigo Enters. Inc.*, 266 So. 3d 207, 212 (Fla. Dist. Ct. App. 2019). "An unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (internal quotation marks omitted). And deception may occur when a misrepresentation or omission is likely to mislead reasonable consumers to their detriment. *Id.*

Boyle insists that two aspects of Ford's warranty constitute an unfair or deceptive trade practice: (1) Ford's warranty is illusory, and (2) "Ford misrepresented the Cutaway's

caster/camber as adjustable while omitting the fact known to Ford . . . that the caster/camber is not adjustable unless the consumer purchases aftermarket parts at a significant expense." Appellant Br. at 26.

We have already established that Boyle's illusory-warranty argument is not persuasive. So this does not constitute a deceptive or unfair practice. As the district court correctly found, "Ford's reliance" on the warranty's non-illusory "clear language" "cannot plausibly be alleged to be unfair or deceptive to a reasonable consumer." R.27, p.11, PageID 457.

As for the caster/camber adjustment, Ford promises consumers that its Cutaway vehicles come "with caster/camber adjustment." R.1, PageID 11. This admittedly does not provide the consumer with all relevant information, like the need for separate parts to adjust the alignment. But Boyle doesn't point to any case where a lack of all relevant information constitutes an "unfair practice" that "offends established public policy" because it's "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *PNR*, 842 So. 2d at 777. And though he does recognize that the meaning of "a deceptive practice is one that is likely to mislead consumers," Appellant Br. at 26 (quoting *Felice v. Invicta Watch Co.*, No. 16-cv-62772-RLR, 2017 WL 3336715, at *2 (S.D. Fla. Aug. 4, 2017)), he must show that it is probable, not merely possible, that Ford is misleading consumers when it says the caster and camber are adjustable, *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007).

It's not likely that Ford's statements would mislead consumers because the caster and camber are in fact adjustable, even if they require aftermarket parts, which Boyle concedes. *See, e.g.*, Appellant Br. at 5 (The caster/camber "requires the purchase and installation of aftermarket parts to make it adjustable."); R.1, PageID 16 (The "owner of the vehicle must purchase aftermarket parts, including adjustable bushings to adjust castor [sic] / camber."). Indeed, even

when the Complaint states that the "Cutaways do ***not*** allow for any caster or camber adjustment," it then admits that the "adjustment to castor [sic] and camber . . . can only be made by purchasing aftermarket parts outside of warranty coverage."  R.1, PageID 12.

So accepting Boyle's own allegations, it's not true that the caster/camber cannot be adjusted at all.  And as the district court noted, because of "the incomplete nature of the product, the fact that aftermarket parts may be required to adjust the alignment of a completed vehicle is not unfair or objectively deceptive to the reasonable consumer."  R.27, p.11, PageID 457.  Perhaps a consumer would assume that the caster and camber are adjustable without new parts, but it is not plausible that Ford's statements would mislead reasonable consumers who know the Cutaway is an incomplete vehicle requiring many new parts to finish.  *See Kurimski v. Shell Oil Co.*, No. 21-80727-CV, 2022 WL 2913742, at *7 (S.D. Fla. June 30, 2022) (dismissing claim of deception because it was "premised on [plaintiff's] own 'unreasonable assumptions,'" which cannot show deception of reasonable consumers (quoting *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021))).  Because Boyle does not sufficiently allege a deceptive or unfair practice, we affirm the district court's dismissal of Boyle's FDUTPA claim.

## V.

For all of the above reasons, we AFFIRM.